[Cite as *State v. Barron*, 2023-Ohio-1249.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-059 |
| | : | O P I N I O N |
| - vs - | | 4/17/2023 |
| | : | |
| DAVID BARRON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. CR-20-36769

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

David Barron, pro se.

**M. POWELL, J.**

{¶1} Appellant, David Barron, appeals a decision of the Warren County Court of Common Pleas denying his petition for postconviction relief.

{¶2} On June 8, 2020, a Warren County grand jury returned a 29-count indictment against appellant. Specifically, appellant was indicted on six counts of trafficking in persons;

six counts of compelling prostitution, each with a human trafficking specification; six counts of promoting prostitution; three counts of rape by force; two counts of felonious assault; and one count each of abduction, aggravated possession of drugs, receiving stolen property, aggravated menacing, intimidation of a crime victim, and corrupting another with drugs. The state alleged that appellant forced two women, Amy and Rose, to engage in prostitution for him.[1] Each prostitution-related count of the indictment covered a different period of time between March 10, 2020, through May 2, 2020. These time periods roughly corresponded to time that the state alleged Barron spent at three different hotels at which he forced Amy and Rose to work as prostitutes.

{¶3} Appellant pled not guilty and the case proceeded to a jury trial. Amy and Detective Jeff Wyss testified on behalf of the state. At the conclusion of the state's case, the trial court granted appellant's Crim.R. 29 motion for acquittal on three counts of trafficking in persons, three counts of compelling prostitution, three counts of promoting prostitution, and one count of rape, all with respect to Rose, and aggravated possession of drugs, receiving stolen property, aggravated menacing, and intimidation of a crime victim. The remaining counts were submitted to the jury. Appellant did not testify or present witnesses on his behalf. On November 5, 2020, the jury found appellant guilty of three counts of trafficking in persons and three counts of promoting prostitution, all with respect to Amy, two counts of felonious assault, and unlawful restraint, a lesser included offense of abduction. The jury found appellant not guilty of the three counts of compelling prostitution related to Amy, two counts of rape, and one count of corrupting another with drugs. The trial court sentenced appellant to a prison term.

{¶4} Appellant filed a direct appeal of his convictions and raised seven

---

1. As we did in our January 18, 2022 opinion upholding appellant's convictions, we are using pseudonyms for Amy and Rose as victims. *State v. Barron*, 12th Dist. Warren No. CA2020-12-088, 2022-Ohio-102.

assignments of error. He challenged his sentence, argued that his convictions were against the manifest weight of the evidence because Amy was not a credible witness, and argued he did not receive effective assistance of counsel. We upheld appellant's convictions and sentence. *State v. Barron*, 12th Dist. Warren No. CA2020-12-088, 2022-0hio-102.

{¶5} On December 22, 2021, appellant filed a petition for postconviction relief ("PCR"), setting forth seven grounds for relief. Appellant supported his PCR petition with numerous exhibits. They included several text message conversations between unidentified individuals; several news articles, court filings, and a federal plea agreement regarding the company Backpage.com, LLC; several motions and discovery requests previously filed in the case by trial counsel; several motions previously filed in the case by appellant pro se; the case docket; portions of unidentified transcripts; and appellant's affidavit. On February 4, 2022, appellant filed an amendment to his PCR petition, adding two grounds for relief. The gist of appellant's claims was that his trial counsel was ineffective.

{¶6} On May 12, 2022, the trial court denied appellant's PCR petition without an evidentiary hearing on three separate grounds: (1) appellant's PCR petition was not signed and did not contain a certificate of service, which itself justified dismissal. Likewise, appellant's amendment to his PCR petition lacked a certificate of service; (2) appellant's claims of ineffective assistance of counsel were barred by res judicata because claims that appellant was prejudiced by trial counsel's failure to fully prepare for the case, present relevant evidence to the jury, effectively examine witnesses, hire consulting experts, and file necessary motions could have and should have been raised on direct appeal; and (3) appellant's PCR petition, supporting affidavit, documentary evidence, files, and record did not set forth sufficient operative facts to establish substantive grounds for relief.

{¶7} Appellant appeals pro se the denial of his PCR petition, raising six

"constitutional violations" which we construe as assignments of error. We note that while the table of contents in appellant's brief lists a sixth assignment of error, it does not appear in Argument or the main body of the brief, and appellant does not provide any analysis for that assignment of error. Accordingly, appellant's sixth assignment of error is summarily overruled. Appellant's remaining five assignments of error challenge only the trial court's finding that his claims were barred by res judicata. They will be addressed together where appropriate.

{¶8} A postconviction proceeding is a collateral civil attack on a criminal judgment, not an appeal of a criminal conviction. *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 15. To prevail on a PCR petition, the petitioner must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶9} Initial petitions for postconviction relief are governed by R.C. 2953.21, which provides three methods for adjudicating the petition. *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 4. When a criminal defendant challenges his conviction through a PCR petition, the trial court may (1) summarily dismiss the petition without holding an evidentiary hearing, (2) grant summary judgment on the petition to either party who moved for summary judgment, or (3) hold an evidentiary hearing on the issues raised by the petition. R.C. 2953.21(D) thru (F).

{¶10} An evidentiary hearing is not automatically guaranteed each time a defendant files a PCR petition. *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 10. "A trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d

279, 1999-Ohio-102, paragraph two of the syllabus.

{¶11} In determining whether a PCR petition alleges substantive grounds for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings and evaluate the petition in the context of the entire record in the case. *State v. Bunch*, Slip Opinion No. 2022-Ohio-4723, ¶ 24; *State v. Blanton*, Slip Opinion No. 2022-Ohio-3985, ¶ 24; R.C. 2953.21(D). If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition. R.C. 2953.21(D) and (E). If the record does not on its face disprove the petitioner's claim, then the court is required to "proceed to a prompt hearing on the issues." R.C. 2953.21(F).

{¶12} A trial court's decision to summarily deny a PCR petition without holding an evidentiary hearing will not be reversed absent an abuse of discretion. *Harding*, 2020-Ohio-1067 at ¶ 6. The term "abuse of discretion" implies that the court's decision is unreasonable, arbitrary, or unconscionable. *Id.*

{¶13} Generally, a trial court may dismiss a PCR petition based on the doctrine of res judicata. *Myers*, 2021-Ohio-631 at ¶ 16. Under res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment. *State v. Wagers*, 12th Dist. Preble No. CA2011-08-007, 2012-Ohio-2258, ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 1996-Ohio-337, syllabus.

{¶14} The presentation of competent, relevant, and material evidence outside the record may defeat the application of res judicata. *Myers* at ¶ 17. However, the evidence submitted with the petition cannot be merely cumulative of or alternative to evidence

- 5 -

presented at trial. *Id.* To overcome the res judicata bar, evidence outside the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record. *Id.* With the exception of certain ineffective assistance of counsel claims, the evidence relied upon must not be evidence that was in existence or available for use at the time of trial or direct appeal. *State v. Clayton*, 12th Dist. Warren No. CA2017-11-162, 2018-Ohio-1777, ¶ 16. If evidence outside the record is "'marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery,' *res judicata* still applies to the claim." *State v. Cowans*, 12th Dist. Clermont No. CA98-10-090, 1999 Ohio App. LEXIS 4157, *8-9 (Sept. 7, 1999).

{¶15} As stated above, the gist of appellant's PCR petition was that his trial counsel was ineffective. To establish ineffective assistance of counsel, appellant must show that his trial counsel's representation was deficient and that he was prejudiced as a result. *Blanton*, 2022-Ohio-3985 at ¶ 45, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶16} In *Blanton*, the Ohio Supreme Court addressed the application of res judicata to PCR petitions raising claims of ineffective assistance of counsel. The supreme court adhered to the rule set forth in its 1982 seminal case that "'[w]here [a] defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief.'" *Blanton* at ¶ 30, quoting *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus. In *Cole*, the supreme court explained that "'generally, the introduction in an R.C. 2953.21 petition of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata.'" *Blanton* at ¶ 31, quoting *Cole* at 114. However, "simply overcoming the res

judicata bar through the introduction of evidence outside the record is not sufficient to entitle the petitioner to a hearing. Rather, to secure a hearing, a petitioner 'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].'" *Id.*

{¶17} The supreme court then articulated a two-part inquiry to determine whether a petitioner who brings forth evidence outside the record of ineffective assistance of counsel is entitled to a hearing: (1) "Has the petitioner introduced competent evidence of ineffective assistance that was not included in the trial record?" and (2) "if so, does that evidence present substantive grounds for relief; that is, if believed, would the newly presented evidence—together with any evidence in the trial record—establish that counsel was ineffective?" *Blanton*, 2022-Ohio-3985 at ¶ 33.

{¶18} The supreme court noted that the general rule that res judicata bars a postconviction claim when the claim is based on evidence that existed or was available to defense at the time of the trial does not apply to postconviction claims alleging ineffective assistance of trial counsel. *Blanton* at ¶ 59-60 (addressing trial counsel's failure to present expert testimony when expert report was known to defendant at the time of his direct appeal). "There is no requirement that to overcome a res judicata bar, the evidence on which such a claim is based must have been unknown or unavailable to the defense at trial. Indeed, the very premise of this sort of ineffective-assistance claim is that counsel erred by failing to present exculpatory evidence that was available to him." *Id.* at ¶ 60. The supreme court further noted, "The rule in *Cole* does not bar all ineffective-assistance claims that were previously raised in a direct appeal." *Id.* at ¶ 38. "Rather, it permits petitioners who present a claim of ineffective assistance and who demonstrate through evidence outside the trial record that their claim either was not or could not have been fairly adjudicated in a direct

appeal to have a *second* opportunity to litigate the claim." *Id.*

{¶19} In support of his PCR petition, appellant attached his own affidavit in which he averred a lack of knowledge of the state's case going into trial, a lack of communication from trial counsel or interest in the evidence appellant wished to present, and trial counsel's disregard of the fact appellant claimed he was in a relationship with one of the victims. The trial court found that appellant's affidavit lacked credibility pursuant to the Ohio Supreme Court's decision in *Calhoun*. Appellant challenges the trial court's finding, arguing that his "affidavit isn't self-serving, it's the truth."

{¶20} When reviewing a PCR petition filed pursuant to R.C. 2953.21, a trial court "should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact" or "discard frivolous claims." *Calhoun*, 86 Ohio St.3d at 284, 292. In determining the credibility of supporting affidavits in postconviction relief proceedings, the trial court should consider all relevant factors, including (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. *Id.* at 285. "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.* "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." *Id.* A trial

court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law. *Id.*

{¶21} The trial court discounted the credibility of appellant's affidavit, on the ground that the trial judge who reviewed appellant's PCR petition was the same judge who presided over appellant's jury trial, appellant had a clear self-interest in the success of his PCR petition, and trial counsel's performance, general demeanor, and defense strategy resulted in the trial court granting trial counsel's Crim.R. 29 motion, thereby dismissing 14 counts, and in the jury acquitting appellant on six counts. We find no abuse of discretion in the trial court discounting the credibility of appellant's own affidavit based upon the foregoing factors.

{¶22} Additionally, appellant's affidavit, though signed and dated by appellant, signed and dated by a notary public, and bearing the notary's seal, does not include a jurat. With regard to an affidavit,

> the jurat is a symbol certifying the administration of an oath, it is not part of an affidavit but simply evidence that oath was taken. It is prima facie evidence that the affidavit was properly executed and sworn to before the notary public on the date stated in the affidavit. To be valid, the jurat must affirmatively reflect: (1) that the affiant's testimony was given under oath or solemn affirmation; (2) that the affiant subscribed the affidavit in the presence of the officer; and (3) the date of the oath and subscription. If the officer taking the affidavit is a notary public, the officer's jurat should be accompanied by the imprint of the notary's stamp and seal. However, apart from the requirement that the jurat affirmatively reflect that the affiant gave testimony pursuant to the oath or solemn affirmation, it will be sufficient if the jurat substantially complies with these requirements.

1 Ohio Jurisprudence 3d, Acknowledgments, Affidavits, Oaths, and Notaries, Section 41 (2023).

{¶23} "The omission of a jurat, in the absence of a statute to the contrary, is not fatal to the validity of the affidavit, so long as it appears either from the rest of the instrument or

from evidence external to the instrument that the affidavit was, in fact, duly sworn to before an authorized officer." *Id.* While appellant's affidavit bore the signature and stamp of a notary public, it did not contain an oath or certification that appellant had been sworn. As a consequence, appellant's affidavit was of no evidentiary value and is not competent evidence. *See Russell v. Creatif' Catering Inc,* 2d Dist. Montgomery No. 17031, 1998 Ohio App. LEXIS 5737 (Dec. 4, 1998); *State v. Ashley*, 4th Dist. Ross No. 99 CA 2514 , 2000 Ohio App. LEXIS 2724 (June 14, 2000).

{¶24} Assignment of Error No. 1:

{¶25} THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO BARRON'S TIMELY FILED PETITION FOR POSTCONVICTION (CLAIM 1) RELIEF PURSUANT TO R.C. 2953.21 THUS VIOLATING BARRON'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 1 AND 14 OF THE OHIO CONSTITUTION.

{¶26} Assignment of Error No. 4:

{¶27} THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO BARRON'S TIMELY FILED PETITION FOR POSTCONVICTION (CLAIM 4) RELIEF PURSUANT TO R.C. 2953.21 THUS VIOLATING BARRON'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 1, 13 AND 14 OF THE OHIO CONSTITUTION.

{¶28} In Grounds 1 and 4 of his PCR petition, appellant argued that his trial counsel was ineffective for failing to properly review discovery, "mount a defense," and present two sets of text messages Amy sent to appellant (the text messages in Ground 4 were sent via the app TEXT NOW). Appellant claimed that presenting those text messages to the jury

would have impeached Amy's testimony and shown that he and Amy were in a relationship and that he was not forcing Amy to do things against her will.

{¶29} The trial court dismissed Grounds 1 and 4 on the ground of res judicata because appellant could have raised the claims of ineffective assistance of counsel on direct appeal. The trial court further found that even if the claims were not barred by res judicata, appellant's PCR petition did not establish a substantive ground for relief. Appellant appeals, arguing the trial court abused its discretion in dismissing Grounds 1 and 4 on the ground of res judicata. Appellant asserts that the text messages he filed with his PCR petition (Exhibits A, B, and C) were not in the trial record and therefore constitute evidence outside the record. The state concedes that the text messages attached to the PCR petition were not part of the trial record.

{¶30} The record shows that the text messages appellant filed with his PCR petition were provided to trial counsel during discovery but not presented to the jury. During Detective Wyss' testimony, the prosecutor started to show two exhibits marked as State's Trial Exhibits 1 and 2, consisting of text messages found on appellant's cellphone. Trial counsel objected to the introduction of text messages sent from someone other than appellant. The trial court excluded texts from third parties and instructed the prosecutor to redact the two exhibits. The prosecutor complied and introduced State's Trial Exhibits 50 through 73, 57A, and 76. These exhibits contained outgoing individual text messages from appellant to Amy, Rose, and another person, and a few incoming text messages from Amy to appellant that Amy had specifically testified about. All other text messages were redacted.

{¶31} Because the unredacted text messages filed with appellant's PCR petition were not contained in the trial record, appellant's ineffective-assistance claims could not have been fully addressed on direct appeal. *See Blanton*, 2022-Ohio-3985 at ¶ 66. "[W]hen

a claim of ineffective assistance is based on counsel's failure to present evidence during the trial-court proceedings, and that evidence is not proffered or otherwise contained in the trial record, it is almost invariably the type of claim that cannot be meaningfully adjudicated in a direct appeal." *Id.* Nonetheless, we find that the trial court did not abuse its discretion in dismissing Grounds 1 and 4 because the evidence, if believed, does not present a substantive ground for relief.

{¶32} Instead of presenting the text messages attached to appellant's PCR petition at trial, trial counsel pursued an alternate strategy to show that appellant and Amy were in a relationship and that appellant was not forcing Amy to do things against her will. Trial counsel asked Amy about renting a hotel room in her name, where her boyfriend and children stayed, and inquired about her "Jack of all trades" work she performed during the time frames in the indictment (such as cleaning houses, painting, and lawn care). Trial counsel cross-examined Amy about her ability to run errands for her children in her father's car, unaccompanied by appellant. In an effort to impeach Amy's testimony she was not and "would never be in a relationship with" appellant, trial counsel asked her about a specific statement she had made to appellant telling him that he got on her nerves but that she still wanted to see him and that his craziness was attractive to her. Trial counsel introduced the text message when Amy denied making the statement. Additionally, trial counsel argued in closing arguments that appellant and Amy were in a relationship, that it was a love triangle between appellant, Amy, and Rose, and that Rose was jealous of the relationship between appellant and Amy.

{¶33} Furthermore, appellant's PCR petition does not address whether the introduction of the text messages attached to the PCR petition would have "opened the door" to the introduction of the text messages the trial court excluded pursuant to trial counsel's objection. The record suggests that counsel's effort to establish the relationship

between appellant and Amy through witness examination rather than risk admission of the text messages unsuccessfully offered by the state was legitimate trial strategy and not ineffective assistance of counsel. Appellant's PCR petition includes no evidence to suggest otherwise.

{¶34} Appellant has therefore failed to set forth facts sufficient to show that his trial counsel performed deficiently or that there is a reasonable probability that the result of the trial would have been different if the text messages attached to appellant's PCR petition had been presented to the jury. Appellant's first and fourth assignments of error are overruled.

{¶35} Assignment of Error No. 2:

{¶36} THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO BARRON'S TIMELY FILED PETITION FOR POSTCONVICTION (CLAIM 2) RELIEF PURSUANT TO R.C. 2953.21 THUS VIOLATING BARRON'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 1.13 AND 14 OF THE OHIO CONSTITUTION.

{¶37} Assignment of Error No. 5:

{¶38} THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO BARRON'S TIMELY FILED PETITION FOR POSTCONVICTION (CLAIM 5) RELIEF PURSUANT TO R.C. 2953.21 THUS VIOLATING BARRON'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 1, 13 AND 14 OF THE OHIO CONSTITUTION.

{¶39} At trial, the state presented evidence that appellant was advertising Amy and Rose as prostitutes on the internet. One of the prostitution websites referred to was

"Backpage." Amy testified that a friend told her he had seen her photograph on Backpage and provided her with a link. Amy testified she clicked on the link and saw a prostitution advertisement for her. Detective Wyss testified that he did not search Backpage during his investigation because he knew that Backpage was no longer in operation.

{¶40} In Ground 2 of his PCR petition, appellant argued that his trial counsel was ineffective for failing to present evidence that Backpage was shut down in April 2018, which would have demonstrated the falsity of Amy's testimony. In Ground 5 of his PCR petition, appellant argued he was entitled to evidence that Backpage was no longer operating and asserted the state was required to provide that information under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972); and *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936 (1999). In support of his PCR petition, appellant submitted Exhibits D and Q. Exhibit D consists of several news articles, court filings, and a federal plea agreement regarding Backpage, showing that the prostitution website was shut down in April 2018. Exhibit Q is the search warrant affidavit submitted by Detective Wyss regarding a vehicle belonging to Amy's father and used by appellant. The affidavit provided, "[Amy] stated Barron places ads on websites like 'Backpage.'"

{¶41} The trial court dismissed Grounds 2 and 5 on the ground of res judicata. The trial court further found that even if the claims were not barred by res judicata, appellant's PCR petition did not establish a substantive ground for relief. Appellant appeals, arguing the trial court abused its discretion in dismissing Grounds 2 and 5 on the ground of res judicata. Appellant asserts that the exact date and the fact Backpage was no longer operating before and during the time frames in the indictment is evidence outside the record barring the application of res judicata.

{¶42} The state concedes that Exhibits D and Q are evidence outside the record.

We find no abuse of discretion in the trial court's dismissal of Grounds 2 and 5 because the evidence, if believed, does not present substantive grounds for relief.

**{¶43}** In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler,* 527 U.S. at 281-282. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls" within the *Brady* rule. *Giglio*, 405 U.S. at 154.

**{¶44}** "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus. The *Brady* test is stringent. *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States* v. *Agurs* (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2392 (1976). "*Brady* requires a 'reasonable probability' of a different outcome with the exculpatory evidence, that is, an undermined confidence in the trial result obtained without the exculpatory evidence." *Jackson* at 33.

**{¶45}** *Brady* does not apply when the information is available from another source, such as by looking at public records. *Owens v. Guida*, 549 F.3d 399, 418 (6th Cir.2008).

As evidenced by Exhibit D, the exact date and the fact Backpage was shut down was publicly available information. Moreover, the only prostitution advertisement that the state used at trial was posted on ListCrawler, a prevalent prostitution website, not on Backpage. The April 2018 shutdown of Backpage was therefore not material evidence under *Brady*.

{¶46} Nevertheless, appellant argued in Ground 2 of his PCR petition that trial counsel was ineffective because had he presented evidence that Backpage ceased operation in April 2018, it would have shown Amy was lying when she testified there was an advertisement containing her photograph on Backpage.

{¶47} As stated above, Detective Wyss testified he did not search Backpage during his investigation of appellant's prostitution-related actions because he knew Backpage was no longer in operation. This testimony indicates that Backpage was not operating during the time periods of the indictment. Exhibit Q, the search warrant affidavit attached to the PCR petition, simply provided, "[Amy] stated Barron places ads on websites like 'Backpage.'" Placing an advertisement on websites *like* Backpage is not the same as placing an advertisement on Backpage. The former is simply a description of the types of websites appellant used to advertise Amy and Rose as prostitutes. Amy's statement in Exhibit Q indicates she was using the name Backpage as a general name to refer to prostitution websites.

{¶48} Furthermore, Amy did not unequivocally testify she was advertised as a prostitute on Backpage. Rather, Amy testified that appellant posted prostitution advertisements on "[a] site on-line. Backpage or something," and that "[m]y friend text me and told me that my picture was on-line on Backpage. Gave me the link and I clicked on it and found out that I was on there." On cross-examination, Amy testified she saw the advertisements with her photographs "when my friend sent them to me." The only person who represented that the advertisements were posted on Backpage was Amy's friend who

was not a witness at trial. Amy did not testify that the link her friend provided led her to Backpage. Rather, she testified that clicking on the link led her to her photograph; however, Amy never stated what website she was looking at. Amy's testimony can be construed as referring to Backpage in a generic sense as representing prostitution websites, as only conveying what her friend had told her, or as simply being mistaken about the website involved. The state presented evidence that Rose was advertised on the prostitution website ListCrawler and that her photograph on that site matched photographs of her on appellant's cellphone.

{¶49} The name of the prostitution website used by appellant to advertise the services of Amy and Rose was not a material aspect of Amy's testimony or appellant's prostitution-related convictions. There is no reasonable probability that the outcome of the jury trial would have been different had trial counsel raised the issue of whether Backpage existed at the times in question or had the state questioned Amy as to whether the advertisement was on Backpage given the shutdown of the website two years prior to the events in question. It would not have negated evidence that appellant was using a website to advertise prostitution services and that he was engaged in various other actions promoting prostitution.

{¶50} Appellant's second and fifth assignments of error are overruled.

{¶51} Assignment of Error No. 3:

{¶52} THE TRIAL COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO BARRON'S TIMELY FILED PETITION FOR POSTCONVICTION (CLAIM 3) RELIEF PURSUANT TO R.C. 2953.21 THUS VIOLATING BARRON'S RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 1, 13 AND 14 OF THE OHIO CONSTITUTION.

{¶53} In Ground 3 of his PCR petition, appellant argued that his trial counsel was ineffective because he failed to hire a criminal investigator after the trial court granted counsel's motion to appropriate funds for an investigator. Appellant asserted that had trial counsel hired the investigator, the latter would have discovered that Backpage was shut down in 2018, months before the time periods in the indictment, and would have reviewed appellant's cellphone and obtained the text messages addressed in appellant's first and fourth assignments of error. The trial court dismissed Ground 3 on the ground of res judicata because appellant could have raised this issue of ineffective assistance of counsel on direct appeal.

{¶54} We find no abuse of discretion in the trial court's dismissal of Ground 3. Appellant's claim of ineffective assistance regarding trial counsel's failure to hire an investigator was primarily based on appellant's motion for appropriation of funds for an investigator, which the trial court granted, and which was therefore evidence in the trial record. Thus, appellant could have raised on direct appeal his trial counsel's failure to hire an investigator based on the original record. *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966 (addressing on direct appeal in a capital case defendant's claims of ineffective assistance related to trial counsel's failure to hire an investigator despite being granted funds and failure to retain a mitigation specialist). The trial court did not abuse its discretion in dismissing Ground 3 on res judicata ground.

{¶55} Even if res judicata does not bar appellant's claim, his PCR petition does not state a substantive ground for relief. Appellant did not present any evidence to support his claim that trial counsel did not hire or use the investigator and a reviewing court "will not infer a defense failure to investigate from a silent record." *State v. Thompson*, 141 Ohio St. 3d 254, 2014-Ohio-4751, ¶ 247. Furthermore, "[a]n attorney's decision not to hire an investigator does not equate to a failure to investigate and result in ineffective assistance

of counsel." *Id.* The record shows and trial counsel represented to the trial court that he had received discovery from the state. Such discovery included the text messages addressed in appellant's first and fourth assignments of error. At trial, trial counsel used a few incoming text messages from Amy to appellant that she had specifically testified about and moved to exclude all other text messages from third parties, resulting in their redaction. Detective Wyss testified that Backpage was no longer in operation. Evidence of what the investigator would have discovered was therefore cumulative to evidence that was available and presented at trial.

{¶56} Appellant's third assignment of error is overruled.

{¶57} In light of the foregoing, we find that the trial court did not abuse its discretion in denying appellant's PCR petition without first holding an evidentiary hearing.

{¶58} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.