[Cite as *State v. Hall*, 2024-Ohio-1235.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Appellee, | : | | CASE NO. CA2023-06-047 |
| | : | | O P I N I O N |
| - vs - | | | 4/1/2024 |
| | : | | |
| TIMOTHY G. HALL, | : | | |
| Appellant. | : | | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR035473

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Russell S. Bensing, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Timothy G. Hall, appeals the decision of the Warren County Court of Common Pleas summarily denying his petition for postconviction relief without a hearing after a jury found him guilty of four counts of rape and three counts of sexual battery that he perpetrated against his then preteen and teenaged stepdaughter, E.A., in 1995, 1997, and 1998. For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} On July 1, 2019, the Warren County Grand Jury returned an indictment charging Hall with ten counts of first-degree felony rape in violation of R.C. 2907.02(A)(1)(b), 2907.02(A)(1)(c), or 2907.02(A)(2). The indictment also charged Hall with seven counts of third-degree felony sexual battery in violation of R.C. 2907.03(A)(5). The charges arose after it was alleged Hall had engaged in "sexual conduct" with two minor children, his adopted daughter, A.Z., and his stepdaughter, E.A., during different periods of the 1990s.

*The Changing Definition of "Sexual Conduct" Under R.C. 2907.01(A)*

{¶ 3} The Ohio Revised Code has provided several different definitions of "sexual conduct" under R.C. 2907.01(A). Effective January 1, 1974, the term "sexual conduct" was initially defined to mean:

> vaginal intercourse between a male and female, anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 4} However, effective September 3, 1996, the term "sexual conduct" was revised to mean:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; *and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.* Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(Emphasis added.)

{¶ 5} The definition of "sexual conduct" was revised in 1996 so that the offense of felonious sexual penetration found under former R.C. 2907.12 would merge into the offense of rape. *See Doe v. Leis*, 1st Dist. Hamilton No. C-050591, 2006-Ohio-4507, ¶

- 2 -

12 (noting that after September 3, 1996 "conduct that would formerly have constituted felonious sexual penetration was defined as 'sexual conduct' under R.C. 2907.01[A] and became prohibited conduct under the rape statute"); *State v. Bolling*, 2nd Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 28 (noting that the felonious sexual penetration statute found under former R.C. 2907.12 "was repealed effective September 3, 1996, and the former conduct constituting [the offense of felonious sexual penetration] was redefined as 'sexual conduct' and included in the new and current rape statute"); and *State v. Rowland*, 10th Dist. Franklin No. 01AP-368, 2001 Ohio App. LEXIS 4306, *9, fn. 2 (Sept. 25, 2001) (noting that the purpose and effect of redefining the term "sexual conduct" was to "specifically clarify that what formerly was defined as 'felonious sexual penetration' [was] now rape").

{¶ 6} Effective March 10, 1998, the term "sexual conduct" under R.C. 2907.01(A) was revised again to mean:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, *without privilege to do so*, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(Emphasis added.)  There have been no further revisions to the definition of the term "sexual conduct" under R.C. 2907.01(A) relevant to this appeal.

*Hall's Five-Day Jury Trial*

{¶ 7} On August 24 through August 28, 2020, the matter proceeded to a five-day jury trial.  When the trial started, Hall faced seven charges related to his alleged sexual abuse of his adopted daughter, A.Z.  Those charges were set forth in Counts 1, 2, 3, 4, 5,

7, and 8 of the indictment.[1] Count 1 charged Hall with raping A.Z. between July 1, 1991 through June 30, 1993 in violation of R.C. 2907.02(A)(1)(b). Pursuant to that statute, no person shall engage in "sexual conduct" with another who is not the spouse of the offender when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Counts 2, 4, and 7 charged Hall with raping A.Z. between July 1, 1991 through June 30, 1993, July 1, 1993 through June 30, 1995, and July 1, 1994 through June 30, 1996 in violation of R.C. 2907.02(A)(2). Pursuant to that statute, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Counts 3, 5, and 8 charged Hall with sexually battering A.Z. between July 1, 1991 through June 30, 1993, July 1, 1993 through June 30, 1995, and July 1, 1994 through June 30, 1996 in violation of R.C. 2907.03(A)(5). Pursuant to that statute, no person shall engage in "sexual conduct" with another, not the spouse of the offender, when "[t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

{¶ 8} Hall also faced seven charges related to his sexual abuse of his stepdaughter, E.A. Those charges were set forth in Counts 9, 10, 11, 12, 13, 14, and 15 of the indictment. Count 9 charged Hall with raping E.A. between June 1, 1995 through October 1, 1995 in violation of R.C. 2907.02(A)(1)(b), the same Revised Code section Hall was alleged to have violated in Count 1. Count 10 charged Hall with raping E.A. between June 1, 1995 through October 1, 1995 in violation of R.C. 2907.02(A)(2), the same Revised Code section Hall was alleged to have violated in Counts 2 and 4. Count

---

1. We note, just as we did in our original decision affirming Hall's conviction on direct appeal, that Count 6, which alleged Hall had raped A.Z. sometime between July 1, 1994 and June 30, 1996 in violation of R.C. 2907.02(A)(1)(c), was nolled by the state prior to trial.

11 charged Hall with sexually battering E.A. between June 1, 1995 through October 1, 1995 in violation of R.C. 2907.03(A)(5), the same Revised Code section Hall was alleged to have violated in Counts 3, 5, and 8.  Count 12 charged Hall with raping E.A. between June 1, 1997 through October 1, 1997 in violation of R.C. 2907.02(A)(2), the same Revised Code Section Hall was alleged to have violated in Counts 2, 4, and 10.  Count 13 charged Hall with sexually battering E.A. between June 1, 1997 through October 1, 1997 in violation of R.C. 2907.03(A)(5), the same Revised Code section Hall was alleged to have violated in Counts 3, 5, 8, and 11.  Count 14 charged Hall with raping E.A. between August 1, 1998 through December 31, 1998 in violation of R.C. 2907.02(A)(2), the same Revised Code section Hall was alleged to have violated in Counts 2, 4, 10, and 12.  Count 15 charged Hall with sexually battering E.A. on August 1, 1998 through December 31, 1998 in violation of R.C. 2907.03(A)(5), the same Revised Code section Hall was alleged to have violated in Counts 3, 5, 8, 11, and 13.

{¶ 9}   On the first day of trial, August 24, 2020, the jury heard testimony regarding Hall's alleged sexual abuse of his adopted daughter, A.Z.  This included A.Z. testifying to several instances where Hall had allegedly digitally penetrated her vagina both prior to and after she turned 13 years old.  Upon the first day of trial coming to an end, and once the jury left the courtroom, the trial court addressed the parties and noted a potential issue regarding the pre-September 3, 1996 definition of "sexual conduct" applicable to Hall's alleged sexual abuse of A.Z. set forth in Counts 1, 2, 3, 4, 5, 7, and 8 of the indictment.  Specifically, as the trial court stated:

> The definition of sexual conduct seems drastically different in 1996, the jury instruction for that. * * * This is for offenses committed before 7/1/96.  It says sexual conduct means vaginal intercourse between a male and female, anal intercourse, fellatio, cunnilingus between persons regardless of sex.  Penetration, however, slight, is sufficient to complete vaginal-anal intercourse. * * * There's no mention of insertion

- 5 -

of other objects into the vaginal or other cavities of the body.
Is — is there something I'm missing here?

The state responded and asked the trial court to hold off on discussing that issue until the next morning so that both parties could have the opportunity to research the matter further. The trial court agreed and recessed for the day.

{¶ 10} The second day of trial began on August 25, 2020 with Hall arguing that "the law's pretty clear that, as a matter of law," the state could not move forward on Counts 1, 2, 3, 4, 5, 7, and 8 related to Hall's alleged sexual abuse of A.Z. between July 1, 1991 through June 30, 1996 given that A.Z. testified to only digital penetration rather than vaginal or anal intercourse. To support this argument, Hall correctly noted that prior to September 3, 1996, "felonious sexual penetration was digital penetration and rape was a separate charge." Therefore, according to Hall, as a matter of law, the state could not go forward "on the charges of rape that [were] based on digital penetration before 1996 when the law changed," because "by definition, the improper crime was presented to the grand jury."

{¶ 11} To this, the trial court responded to Hall's argument and stated, in pertinent part, the following:

> Listen, the bottom line is I'm not in a position as I sit here right at this moment after I've heard less than half of one witness to make any determinations on that. * * * I don't know what the rest of the evidence is going to be. There may be evidence that does match this. * * * I think a Rule 29 at the close of the State's case would be the appropriate time to deal with this issue, and not in the middle of the first witness. * * * That's why I think it's just premature.

{¶ 12} Following this exchange, as well as further discussion about the release of certain grand jury testimony to Hall, the state resumed its direct examination of A.Z. Shortly thereafter, as the state's direct examination of A.Z. progressed, the trial court requested a sidebar with the parties, following which the trial court excused the jury from

the courtroom. Once the jury had exited from the courtroom, the trial court addressed the parties again and noted that, because the definition of "sexual conduct" had changed effective September 3, 1996, it was in a "spot" given that it "didn't hear anything else with the continuation of this particular alleged victim" that would support a finding that Hall had engaged in "sexual conduct" with A.Z. as that term was originally defined in 1974. The trial court then noted that it felt the need to correct this issue now before the trial progressed any further because the testimony offered by A.Z. does not "fit" into the pre-September 3, 1996 definition of "sexual conduct" applicable to Counts 1, 2, 3, 4, 5, 7, and 8 of the indictment. To this, the state agreed and noted that "we're stuck" with the original "1974 definition of sexual conduct, in terms of the allegations that cover the time period of [A.Z.]" The trial court then stated:

> Okay. So then the question now becomes, do I allow you to continue with — with your case in chief with [A.Z.] as 404(B)? That's — that's where I'm at right now. * * * Or do I simply * * * give an instruction and tell the jury, look, this is what's happened. The definition of sexual conduct pre-1996 was different and it's it doesn't fit up with what's — what's been testified to so — that I'm dismissing those charges, and then give a strong instruction with regard to 404(B). That's where I'm at.

{¶ 13} Continuing, the trial court then noted that it was "trying to salvage some — something here" when considering everyone had "invested a lot of time and energy to get to this point and I haven't heard any other alternatives." Hall responded and argued that he did not think it was "fixable" and that there was no curative instruction the trial court could provide to the jury "that would cure the taint and the prejudice that has occurred" given the nature of A.Z.'s testimony. Hall also argued that a curative instruction would not be sufficient because:

> if you tell this jury why, that the, quote, that some people might consider to be a technicality of law because the [state] didn't properly indict the case, that jury is irreparably tainted. You

can't fix that with a curative instruction.

{¶ 14} Hall instead argued that "it has to be a new jury. And we have to start over, whether we like it or not." The trial court disagreed with Hall and instead determined that it would make a "course correction" by dismissing Counts 1, 2, 3, 4, 5, 7, and 8 related to Hall's alleged sexual abuse of A.Z. and provide the jury with a limiting instruction on the manner in which it could consider A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B). Despite the trial court noting its intentions, Hall nevertheless continued arguing against the trial court allowing the trial to continue with only a curative instruction being provided to the jury because, at that point, the jury had already heard A.Z.'s testimony and "[y]ou can't unring the bell." But, like before, the trial court responded to Hall's argument by stating the jury "would be entitled to hear that anyway under 404(B)."

{¶ 15} Changing tactics, Hall then argued, in pertinent part, the following:

Okay. In a different context. Context means everything. Coming in as a 404(B) to say this is uncharged criminal conduct, you can't consider for any other reason for the — other than the pattern under 404(B).

Here, they will have heard it first saying, the State is presenting this evidence in the context of guilt beyond a reasonable doubt. Those are two separate standards that — and the — and to say that a jury — and these are laypeople.

I mean, they've got — I - I have tried to explain these issues to people who are laypeople. They don't understand. These are — look at the lawyers in here. Look at the wealth of legal knowledge and wisdom we have and look at how we're struggling with it.

And you're going to tell me that a jury isn't going to struggle with that or wonder why?

{¶ 16} Unpersuaded, the trial court responded and stated, "[t]hey'd probably struggle with it less because they're not lawyers and they would simply say, oh, the Judge said this. I'm going to — I'm going to take that — to the bank." Hall then responded,

"[b]ut the bottom line is, Judge, if you want to — if you want to assure that Tim Hall gets a clean and fair due process, it's got to be a mistrial. A curative instruction doesn't make it." The trial court then took a short recess to consider the matter further. A brief time later, the trial resumed with the trial court stating:

> All right. We're back on the record outside the presence of the jury. The Court is probably a little hasty in taking this recess and allowing this — this motion to be made at this point in time.
>
> I don't know why, like in any other case, we wouldn't allow the State to continue to proceed. I think we all know where this is heading. But the appropriate time for a Rule 29 motion to dismiss those counts of the indictment would be at the close of the State's case.
>
> I'm giving everybody advance notice that, based on what the Court has heard and the — and the concessions appears to be made that it would be the Court's intention to grant that motion at that time. But it's not right now.
>
> So knowing where this is going with [A.Z.] and those counts relating to her, I'm going to allow the State to continue presenting their case in chief, and then let's move this along. We know where this is going, and then I will make a ruling on the — the Rule 29 and we'll go from there. Motion for mistrial is denied.

{¶ 17} The jury was then returned to the courtroom and A.Z.'s testimony on direct examination continued. Following A.Z. testimony about several telephone calls, voicemails, and text messages that she had received from Hall wherein Hall admitting to inappropriately touching her as a child, the state concluded its direct examination of A.Z. and the trial court recessed for lunch. The trial thereafter resumed with Hall's cross-examination of A.Z., during which Hall questioned A.Z. about a litany of topics. This included, among things, Hall questioning A.Z. regarding the manner in which she got the "ball rolling" with the investigation into her allegations of sexual abuse against Hall; several photographs depicting A.Z. with Hall and his wife, B.H., during loving, family

moments like when A.Z.'s husband asked A.Z. to marry him while at Hall's and B.H.'s house in 2003; and why A.Z. left out certain, specific details in her written statement outlining her allegations against Hall that she had provided the Springboro Police Department. This also included Hall questioning A.Z. about why she did not simply go to her mother's house that was just a short distance away rather than endure Hall's alleged sexual abuse, why A.Z. did not tell anybody that Hall was sexually abusing her during Hall's and her mother's divorce proceedings, and why the teacher that A.Z. claims she reported Hall's sexual abuse during her sophomore year of high school, N.J., did not report A.Z.'s allegations despite N.J. being a "mandatory reporter."

{¶ 18} Once Hall's cross-examination of A.Z. concluded, the state then continued with its case-in-chief by calling to the stand A.Z.'s mother, S.H. The second day of trial concluded with Hall's cross-examination of S.H. The third day of trial, August 26, 2020, consisted of E.A. testifying about the sexual abuse Hall had perpetrated against her both before and after she turned 13 years old. This included E.A. testifying to an incident where she remembers Hall having raped her at their home on Eyler Drive in Clearcreek Township, Warren County, Ohio in the summer of 1995 when she was 12 years. E.A. also testified about Hall raping her at their home on Fairway Drive in Springboro, Warren County, Ohio in the summer of 1997 and the fall of 1998 when she was 14 and 15 years old, respectively. The fourth day of trial began with the state calling two detectives to the stand to testify, Detective Kevin Barton with the Clearcreek Township Police Department and Detective Terry Dunkel with the Springboro Police Department. Once their testimony concluded, the state rested and moved for the admission of its exhibits, the majority of which were admitted into evidence without objection.

{¶ 19} Following the admission of the state's exhibits, Hall then moved for a Crim.R. 29(A) motion for acquittal on Counts 1, 2, 3, 4, 5, 7, and 8 on the indictment

related to his alleged sexual abuse of A.Z. To support this claim, Hall argued that "the definition that was not met, legal definition of penetration by a penis." The state agreed that "there was a change in the law" regarding the definition of "sexual conduct" that limited it to "vaginal intercourse, anal intercourse and two forms of sexual oral intercourse." Because of this change in the law, the state noted that it did not "really have a good argument" and agreed that "the testimony — that [A.Z.] does not meet that standard." Upon hearing this, the trial court granted Hall's Crim.R. 29(A) motion for acquittal on Counts 1, 2, 3, 4, 5, 7, and 8 of the indictment related to Hall's alleged sexual abuse of A.Z. between July 1, 1991 through June 30, 1996. In so holding, the trial court initially stated that, "[t]he Court finds that the testimony of [A.Z.] related solely to digital penetration, and that all of the offenses relating to her occurred prior to July 1st of 1996." The trial court then stated:

> There are no allegations concerning [A.Z.] post that date. It's clear that the definition of sexual conduct, which is alleged in all of those counts that have been moved by the defense to be dismissed deal with digital penetration only. And, therefore, they do not — they do not satisfy the legal definition of sexual conduct as alleged in the indictment for rape or sexual battery. So, therefore, Counts 1, 2, 3, 4, 5, 7 and 8 will be dismissed.

{¶ 20} Following its decision on Hall's Crim.R. 29(A) motion for acquittal, the trial court then denied Hall's renewed motion for a mistrial that he had filed with the trial court on the morning of the third day of trial. In so holding, the trial court stated:

> At this time, and again, the Court has obviously struggled with this this week and — and, again, in — there — there's several different ways that I can look at it.
>
> I believe that — that allowing the State — again, if I look at it, that I grant your motion and we come back and we try this case again, the Court believes that the — the next jury is going to hear the exact same testimony, only in — in a 404(B) context versus the — those additional counts from the indictment.

- 11 -

So I — the Court believes that I would be in the exact same position, just with a different jury at that time. I don't think that at this point it time, there's been any demonstration that the prejudicial effect outweighs the probative value. Clearly prior acts, other acts are permitted under evidence rule 404(B).

So, at this time, the Court is going to deny your request for a mistrial.

{¶ 21} Upon denying Hall's renewed motion for a mistrial, the trial court then recessed for lunch. After returning from lunch recess, the state formally rested and moved for the admission of its exhibits. Once this happened, the trial court addressed the jury and stated, "All right. Thank you. All right. Ladies and gentlemen of the jury, I need you to pay close attention right at this moment." The trial court then instructed the jury as follows.

The Court has withdrawn from your consideration Counts 1, 2, 3, 4, 5, 7 and 8. You are not to speculate as to why the Court has withdrawn them. Evidence relating to those counts was received about the commission of other acts, other than the remaining offenses with which [Hall] is charged in this trial, specifically the allegations made by [A.Z.], that evidence was allowed for a limited purpose. It was not received and you may not consider it to prove the character of [Hall] in order to show that he acted in conformity with that character in this case with the remaining charges.

If you find at the close of the case that the evidence of the other acts is true and that [Hall] committed them, you may consider that evidence only for the purpose of deciding whether it tends to prove [Hall's] motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

{¶ 22} For the remainder of the fourth and fifth days of trial, which took place on August 27 and 28, 2020, Hall proceeded with his defense case-in-chief by calling an additional five witnesses to the stand. These witnesses included A.Z.'s high school chemistry teacher, N.J., Hall's biological daughter, A.L., Hall's sister-in-law, C.H., and Hall's wife, B.H. Hall did not testify in his defense. As part of her testimony, Hall's wife,

B.H., testified that she never saw anything that would have been a "red flag" regarding how Hall treated A.Z. or E.A. when they were children. B.H. also testified that she did not see or hear anything that she felt was "unusual" with Hall. B.H. further testified that she did not see any "signs of any distress or anything" with A.Z. or E.A. B.H. additionally testified that she did not see anything that would have led her to believe Hall was sexually abusing any child, including A.Z. and E.A. B.H. also testified that for E.A. to say the things she is now claiming that E.A. has "got some deep-seeded mental health issues that she needs to probably get addressed." B.H. testified the same was true as it relates to A.Z. Following B.H.'s testimony, Hall rested his defense case-in-chief and moved to admit his exhibits, of which all but two were admitted into evidence by the trial court without objection.

{¶ 23} The trial then moved on to the presentation of the parties' closing arguments. During his closing argument, Hall maintained his original defense strategy that he introduced to the jury as part of his opening statement. That is, Hall argued that the allegations levied against him by both A.Z. and E.A. were false and that, while he did admit to having "sexual contact" with A.Z. and E.A. by inappropriately touching them both one time when they were children, he had never engaged in "sexual conduct" with either A.Z. or E.A. as was alleged in the indictment. This included the following as it relates to the manner in which the jury could consider A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B):

> Now, got to talk to you a little about — this is what we call evidence Rule 404(B). It's in your instructions as alleged other acts. It's important that you pay strict attention to that rule and here's why.
>
> It is a very, very limited instruction on what you're allowed to consider it for, and this relates to [A.Z.'s] allegations. You may only consider that evidence for a very limited, narrow purpose that relates to — not character, not character. You cannot use

that information to say, because [Hall's] admitted to two — two illegal acts that he's not charged for, that that means he committed rape.  You cannot do that.

Hall also stated:

You're only allowed to use [A.Z.'s testimony] for that limited purpose of opportunity, plan, whether or not you think — and that requires you to get to the place of thinking that there's some truth, truth in what [A.Z.] says.

So you can't convert that belief that relates to [A.Z.] into a reason to find [E.A.'s] charges founded.  In other words, to find [Hall] guilty because you've got to look at the independent evidence as it relates to [E.A.'s] claim.

The instructions lay that out for you, somewhat legalese.  But when you look at it, I think that you will understand what that instruction means.

{¶ 24}  Once the parties' closing arguments were complete, the trial court provided its final instructions to the jury.  This included the following instruction regarding the way the jury could consider A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B).

Evidence was received about the commission of other acts, other than the offenses with which [Hall] is now charged in this trial.  Specifically, I am referring to the allegations of [A.Z.]

That evidence was received only for a limited purpose.  It was not received and you may not consider it to prove the character of [Hall] in order to show that he acted in conformity with that character in this case regarding the remaining counts involving [E.A.]

If you find that the evidence of other acts as alleged by [A.Z.] are true, and that [Hall] committed them, you may consider that evidence only for the purposes of deciding whether it proves [Hall's] motive, opportunity, intent or purpose, absence of mistake or accident, or preparation or plan to commit the offenses charged in this trial.  That evidence cannot be considered for any other purpose.

{¶ 25}  After the trial court completed its final jury instructions, the jury was then released for deliberations.  Three hours and five minutes later, the jury returned to the courtroom with a verdict finding Hall guilty of sexually abusing E.A. as alleged in Counts

9, 10, 11, 12, 13, 14, and 15 of the indictment. Approximately two months later, on November 24, 2020, the trial court held a sentencing hearing. During that hearing, the trial court merged Counts 9, 10, and 11 together, Counts 12 and 13 together, and Counts 14 and 15 together as allied offenses of similar import. Following the trial court's merger, the state elected to proceed with sentencing Hall on Counts 9, 12, and 14. The state's election effectively consolidated the seven offenses that Hall had been found guilty into the 1995 rape of E.A. at the house on Eyler Drive in Clearcreek Township, Warren County, Ohio, and the 1997 and 1998 rapes of E.A. at the house on Fairway Drive in Springboro, Warren County, Ohio. Following the state's election, the trial court then proceeded with its sentencing decision and sentenced Hall to a mandatory term of life in prison. The trial court also designated Hall a sexual predator and notified Hall that he would be subject to a mandatory five-year postrelease control term if he was ever released from prison.

*Hall's Direct Appeal and the Ohio Supreme Court's Decision Declining Review*

{¶ 26} On December 14, 2020, Hall filed a direct appeal from his conviction to this court. To support his appeal, Hall raised six assignments of error for this court's consideration. Within his six assignments of error, Hall argued the trial court erred by denying his motion for a mistrial because A.Z. was allowed to testify as a "victim" of his alleged sexual abuse at trial, which "[e]ven the best curative instruction could not eliminate the inflammatory prejudice caused to [him]." Hall also argued the trial court erred by admitting A.Z.'s testimony as "other-acts" evidence pursuant to Evid.R. 404(B), as well as in the manner in which the trial court instructed the jury it could consider A.Z.'s testimony under Evid.R. 404(B).

{¶ 27} However, upon review, this court disagreed with each of Hall's arguments raised in support of his six assignments of error and affirmed Hall's conviction in its entirety on April 4, 2022. *State v. Hall*, 12th Dist. Warren No. CA2020-12-087, 2022-Ohio-

- 15 -

1147. In so holding, this court noted that "[n]obody," not the trial court, Hall, or the state, knew prior to A.Z. taking the stand on the first day of trial that it was only after September 3, 1996 that the definition of "sexual conduct" set forth in R.C. 2907.01(A) included digital penetration. *Id.* at ¶ 202. This court also noted that, although not perfect, Hall nevertheless received a fair trial. *Id.* at ¶ 187. Shortly after this court issued its opinion, Hall appealed this court's decision to the Ohio Supreme Court. The Ohio Supreme Court, however, declined to accept Hall's appeal for review on August 17, 2022. *State v. Hall*, 167 Ohio St.3d 1490, 2022-Ohio-2788.

*Hall's Petition for Postconviction Relief and the Trial Court's Dismissal*

{¶ 28} On April 15, 2022, less than two weeks after this court issued our opinion affirming Hall's conviction on direct appeal, Hall filed a pro se petition for postconviction relief. Although not explicit, Hall filed his petition pursuant to R.C. 2953.21(A)(1)(a)(i). Pursuant to that statute, any person who has been convicted of a criminal offense, and who claims that there was such a denial or infringement of the person's rights as to render the judgment "void or voidable" under the Ohio Constitution or the United States Constitution, "may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief[.]" To support his postconviction relief petition, Hall presented seven grounds for relief, all seven of which were based upon his trial counsel's alleged ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶ 29} However, given Hall's arguments advanced in his appellate brief, only three of those grounds are relevant to this appeal. The first of those three stated grounds provided, in pertinent part, the following: (1) ineffective assistance of counsel for failing to "prepare an effective defense prior to trial," to "present an effective defense including trial

strategy," to "protect and preserve" Hall's "legal rights for future appeals," and to "raise an objection" and "motion" prior to trial challenging the state's ability to move forward on Counts 1, 2, 3, 4, and 7 of the indictment as it related to his alleged sexual abuse of his adopted daughter, A.Z., all of which was to have occurred prior to the September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A) came into effect, where none of the pretrial information supported those counts and Hall's trial counsel "missed it."[2]

{¶ 30} Whereas the second and third stated grounds provided (2) ineffective assistance of counsel for failing to "adapt a strategy" upon learning the charges related to Hall's alleged sexual abuse of A.Z. would likely be dismissed at the end of the state's case-in-chief, as well as for failing to object to the trial court's instructions it provided to the jury as it relates to the manner in which the jury could consider A.Z.'s testimony as "other-acts" evidence pursuant to Evid.R. 404(B); and (3) ineffective assistance of counsel for failing to adapt a varying trial strategy despite a "fundamentally changed set of circumstances" after learning the charges related to Hall's alleged sexual abuse of A.Z. would likely be dismissed at the end of the state's case-in-chief, and for providing the jury with "incomprehensible instructions" during closing argument regarding how it could consider A.Z.'s testimony as "other-acts" evidence pursuant to Evid.R. 404(B), which "grievously undermined" Hall's right to fair trial and "adversely influenced the jury."

{¶ 31} To support those three stated grounds for relief, Hall attached to his postconviction relief petition this court's decision affirming his conviction on direct appeal, as well as affidavits from Hall and his wife, B.H., wherein they both averred that, while driving home following the first day of trial, one of Hall's attorneys stated to them over the

---

2.  We note that, for reasons unknown, Hall's first ground for relief addresses only Counts 1, 2, 3, 4, and 7 of the indictment without making any reference to the other two counts related to his alleged sexual abuse of A.Z. set forth in Count 5 and Count 8 of the indictment.

phone, "Wow! I wish we would have found that," in reference to the lack of digital penetration in the pre-September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A).

{¶ 32} On May 26, 2022, the state filed a motion to dismiss Hall's petition for postconviction relief, or, in the alternative, motion for summary judgment. Just over three months later, on August 30, 2022, the trial court issued a decision and entry summarily dismissing Hall's postconviction relief petition without a hearing. In so holding, the trial court initially determined that Hall's "assertions of ineffective assistance of counsel are barred by the doctrine of res judicata." The trial court also noted that, even if Hall's ineffective assistance of counsel claims were not barred by the doctrine of res judicata, "this Court would still find [Hall's] ineffective assistance of counsel argument fails, as [Hall] cannot show that trial counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for the defective representation, the outcome of the proceeding would have been different." This is in addition to the trial court finding "the affidavits relied upon by [Hall] in his postconviction petition lack credibility" and must be "weighed cautiously" given that both Hall and his wife, B.H., "have a clear interest in [Hall's] success in this petition." The trial court thereafter concluded by finding Hall's petition for postconviction relief must be summarily dismissed without a hearing because "the petition is barred by the doctrine of res judicata and the petition, supporting affidavits, documentary evidence, files, and record do not set forth sufficient operative facts to establish substantive grounds for the relief requested."

**Hall's Appeal and Single Assignment of Error for Review**

{¶ 33} On September 30, 2022, Hall filed a notice of appeal from the trial court's decision summarily denying his petition for postconviction relief without a hearing. Following some delay, this court accepted Hall's appeal as timely and issued a scheduling

order directing when the record and the briefs of the parties were to be filed. Pursuant to that scheduling order, the parties filed their respective briefs with this court on October 9, November 30, and December 21, 2023. Oral argument was thereafter held before this court on February 20, 2024. Hall's appeal now properly before this court for decision, Hall has raised one assignment of error for review. In that single assignment of error, Hall argues the trial court erred by summarily denying his postconviction relief petition without a hearing. We disagree.

*Petition for Postconviction Relief Standard of Review*

{¶ 34} "In Ohio, persons convicted of criminal offenses may petition a trial court for postconviction relief if they fit into one of four categories." *State v. Miller*, Slip Opinion No. 2023-Ohio-3448, ¶ 19 (Kennedy, C.J., concurring in the judgment). Those four categories are set forth in R.C. 2953.21(A)(1)(a)(i) through (iv). Relevant here is the first category, which "permits a person convicted of a criminal offense to petition the trial court to vacate his conviction when he believes 'there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" *State v. Johnson*, Slip Opinion No. 2024-Ohio-134, ¶ 1, quoting R.C. 2953.21(A)(1)(a)(i). When a criminal defendant challenges his conviction through a postconviction relief petition, like Hall does in this case, the trial court may hold an evidentiary hearing on the issues raised by the petition. *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 4, citing R.C. 2953.21(D) thru (F). However, "[a]n evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief." *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 11. Rather, "[t]he trial court, before granting a hearing on a petition filed under R.C. 2953.21(A)(1)(a)(i), is required to 'determine whether there are substantive grounds for relief.'" *Miller*, quoting R.C.

2953.21(D).

{¶ 35} "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, ¶ 24, citing *State v. Milanovich*, 42 Ohio St.2d 46, 50 (1975); and R.C. 2953.21(F). "In determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings." *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, ¶ 24, citing R.C. 2953.21(D). "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Id.*, citing R.C. 2953.21(D) and (E). That is to say, "'[a] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.'" *State v. Barron*, 12th Dist. Warren No. CA2022-09-059, 2023-Ohio-1249, ¶ 10, quoting *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus. However, "[i]f the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.'" *Bunch*, quoting R.C. 2953.21(F); *see also State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 28 ("[t]he defendant is entitled to an evidentiary hearing when the allegations in the motion demonstrate substantive grounds for relief").

{¶ 36} "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing will not be reversed absent an abuse of discretion." *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 6. "The standard is deferential, requiring the trial court to engage in more than mere error in law or

judgment." *State v. Jones*, 12th Dist. Butler No. CA2022-04-036, 2022-Ohio-3864, ¶ 9. This court must instead "find that the trial court's ruling was unreasonable, arbitrary, or unconscionable." *State v. Payton*, 12th Dist. Fayette No. CA2022-01-001, 2022-Ohio-2829, ¶ 7. "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7. "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed.2014). "An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness." *State v. Wane*, 12th Dist. Butler Nos. CA2020-01-010, CA2020-01-011, CA2020-01-014, and CA2020-01-015, 2020-Ohio-4874, ¶ 22. Therefore, for this court to find an abuse of discretion, "the trial court's judgment must be so profoundly and wholly violative of fact and reason that 'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984).

*The Application of the Doctrine of Res Judicata*

{¶ 37} To support his single assignment of error, Hall initially argues the trial court erred by misapplying the doctrine of res judicata when summarily dismissing his petition for postconviction relief without a hearing. We disagree.

{¶ 38} "It is well established that a trial court may dismiss a postconviction relief petition on the basis of the doctrine of res judicata." *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 30. "The doctrine of res judicata precludes a convicted defendant 'from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could

have been raised' at trial or on direct appeal." *Hatton*, 2022-Ohio-3991 at ¶ 22, quoting *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. "So a court reviewing a postconviction-relief petition generally may not decide a claim that could have been presented at trial and raised on direct appeal." *Blanton*, 2022-Ohio-3985 at ¶ 2, citing *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). There is a twist, however, when it comes to petitions for postconviction relief that are based on the alleged ineffective assistance of counsel. *Id.* As noted by the Ohio Supreme Court, "res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief." *Id.*, citing *State v. Cole*, 2 Ohio St.3d 112, 113-114 (1982). That is to say:

> if the petitioner's appellate counsel is different from his trial counsel and the matter could have been subject to appeal on the record, res judicata will bar that postconviction claim for relief. A different outcome results if the petitioner had the same attorney at trial and on appeal or he must rely on evidence outside the trial record to establish his claim for relief. * * * In that circumstance, res judicata does not serve to bar a claim of ineffective assistance of counsel in a postconviction petition.

(Internal citation deleted.) *State v. Grate*, 5th Dist. Ashland No. 22-COA-029, 2023-Ohio-2103, ¶ 30. Therefore, while it is generally true that res judicata will bar a claim that could have been presented at trial and raised on direct appeal, res judicata does not, in and of itself, "bar all ineffective-assistance claims that were previously raised in a direct appeal." *Blanton* at ¶ 38.

{¶ 39} Rather, a petitioner who presents a postconviction ineffective assistance of counsel claim, and who demonstrates through evidence outside the trial record that their ineffective assistance of counsel claim either was not, or could not have been, fairly adjudicated in the petitioner's direct appeal, the petitioner is provided "a *second*

opportunity to litigate the claim." (Emphasis sic.). *Blanton*, 2022-Ohio-3985 at ¶ 38. This necessarily means that "claims that rely on evidence outside the record may be heard on postconviction review even if similar claims have been previously raised and adjudicated against the petitioner in his direct appeal." *Id.* at ¶ 41. This would include, for example, a petitioner's ineffective assistance of counsel claim "regarding counsel's failure to present evidence." *Id.* It would not include, however, a petitioner's ineffective assistance of counsel claim "based on counsel's failure to object to obviously prejudicial evidence" as that claim could have fairly been "resolved on appeal based on evidence entirely within the trial record." *Id.* Therefore, "when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred." *Id.* at ¶ 2. Conversely, where a petitioner has brought forth evidence outside the record of ineffective assistance of counsel, that showing is generally sufficient, "'if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata.'" *Id.* at ¶ 31, quoting *Cole* at 114.

{¶ 40} In this case, Hall, whose trial counsel and counsel on direct appeal were not the same, brought forth evidence outside the trial record in support of his ineffective assistance of counsel claim. That evidence included, most notably, Hall's and his wife B.H.'s affidavits, wherein they both averred that, while driving home following the first day of trial, one of Hall's attorneys stated to them over the phone, "Wow! I wish we would have found that," in reference to lack of digital penetration in the pre-September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A). However, although presenting evidence that was undoubtably outside the trial record, Hall has not demonstrated that without the benefit of such evidence his ineffective assistance of counsel claim either was not, or could not have been, fairly adjudicated as part of his direct appeal to this court. That is to say, while potentially helpful to Hall had that evidence been a part of the trial

record, Hall's claim that his trial counsel was ineffective for failing to discover the pre-September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A) did not include digital penetration was in no way reliant upon any evidence outside of the trial record. This includes either Hall's or Hall's wife B.H.'s affidavits.

{¶ 41} Rather, based on the record properly before this court, we find it clear that Hall could have instead, had he so chosen, raised that ineffective assistance of counsel claim as part of an appropriately worded assignment of error. Hall did not raise that issue as part of his direct appeal and the doctrine of res judicata bars Hall from doing so now as part of his petition for postconviction relief. *See, e.g., State v. Brodie*, 9th Dist. Medina No. 23CA0005-M, 2023-Ohio-3744, ¶ 13 (affirming trial court's decision dismissing appellant's petition for postconviction relief on the basis that his ineffective assistance of counsel claims were barred under the doctrine of res judicata given that each of the issues appellant raised in support of his ineffective assistance of counsel claim could have been raised either at trial or on direct appeal).

{¶ 42} "The petitioner can avoid the bar of res judicata by submitting evidence outside the record on appeal that demonstrates that the petitioner could not have raised the claim based on information in the original record." *State v. Froman*, 12th Dist. Warren No. CA2020-12-080, 2022-Ohio-2726, ¶ 24. However, "[f]inding an item outside the record to attach to a petition does not turn an issue into a substantive post-conviction claim where it is essentially cumulative to evidence that was in the record on a topic that could have been raised on direct appeal." *State v. Boyd*, 7th Dist. Mahoning No. 23 MA 0012, 2023-Ohio-4725, ¶ 41. Moreover, "[i]f the evidence outside the record is 'marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery,' res judicata still applies to [bar] the claim." *State v. Barron*, 12th Dist. Warren No. CA2022-09-059, 2023-Ohio-1249, ¶ 14, quoting *State v. Cowans*,

12th Dist. Clermont No. CA98-10-090, 1999 Ohio App. LEXIS 4157, *8-*9 (Sept. 7, 1999). Such is the case here. Therefore, contrary to Hall's claim otherwise, the trial court did not err in its application of the doctrine of res judicata when summarily dismissing Hall's petition for postconviction relief without a hearing. To the extent Hall claims otherwise, such argument lacks merit.

*Hall's Evidence Does Not Present Substantive Grounds for Relief*

{¶ 43} Regardless, even if we were to find the doctrine of res judicata did not apply to bar Hall's ineffective assistance of counsel claim, it is important to note that "merely providing evidence outside the record is not sufficient to entitle a petitioner to a hearing." *State v. Johnson*, 12th Dist. Warren No. CA2022-09-063, 2023-Ohio-879, ¶ 21. That is to say, "simply overcoming the res judicata bar through the introduction of evidence outside the record is not sufficient," in and of itself, to necessitate the trial court holding a hearing on the matter. *Blanton*, 2022-Ohio-3985 at ¶ 31.

{¶ 44} Rather, to be entitled to a hearing, "a petitioner 'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].'" (Brackets sic.) *Id.*, quoting *Cole*, 2 Ohio St.3d at 114. Therefore, in cases where the petitioner has brought forth evidence outside the record of ineffective assistance of counsel, which we will assume Hall did for purpose of this court's alternative analysis, a two-part inquiry applies to determine whether the petitioner is entitled to a hearing. *Barron*, 2023-Ohio-1249 at ¶ 17. That two-part inquiry provides (1) "Has the petitioner introduced competent evidence of ineffective assistance that was not included in the trial record?" and (2) "if so, does that evidence present substantive grounds for relief; that is, if believed, would the newly presented evidence—together with any evidence in the trial record—establish that counsel was ineffective?" *Blanton* at ¶ 33.

{¶ 45} When applying this two-part inquiry to the case at bar, we must examine Hall's postconviction ineffective assistance of counsel claim as it relates to the trial court's decision to summarily dismiss his petition without a hearing "rather than as it affects a decision on the merits of an appeal or on the merits of the postconviction petition." *Bunch*, 2022-Ohio-4723 at ¶ 27. Thus, Hall's petition for postconviction relief "need not definitively establish counsel's deficiency" or whether it prejudiced Hall. *Id.*; *State v. Belton*, 6th Dist. Lucas No. L-20-1121, 2023-Ohio-294, ¶ 73 ("when the issue is whether to grant a hearing on a postconviction petition, rather than as to the merits of the postconviction petition,* * * the postconviction petition does not need to definitively establish that trial counsel was deficient, or that appellant was prejudiced"). Instead, to be entitled to a hearing, Hall's petition "must be sufficient on its face to raise an issue whether [he] was deprived of the effective assistance of counsel, and [his] claim depends on factual allegations that cannot be determined by examining the record from his trial." *Id.*, citing *Milanovich*, 42 Ohio St.2d at paragraph one of the syllabus; and *Cole*, 2 Ohio St.3d at 114. "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Barron*, 2023-Ohio-1249 at ¶ 11, citing R.C. 2953.21(D) and (E)."

{¶ 46} To support his ineffective assistance of counsel claim, Hall relied upon his and his wife B.H.'s affidavits, wherein they both averred that, while driving home following the first day of trial, one of Hall's attorneys stated to them over the phone, "Wow! I wish we would have found that," in reference to lack of digital penetration in the pre-September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A). However, after a thorough review of the record, the allegations set forth within Hall's and B.H.'s affidavits, together with the evidence contained within the trial court record, do not present substantive grounds that would entitle Hall to relief.

{¶ 47} Rather, Hall's allegations set forth within his and his wife B.H.'s affidavits, together with the evidence contained within the record, merely establish what we already knew, and one of the issues that this court specifically addressed as part of Hall's direct appeal. That being, the complete lack of awareness on the part of Hall's trial counsel, the state, and even the trial court, that the charges related Hall's alleged sexual abuse to A.Z. set forth in Counts 1, 2, 3, 4, 5, 7, and 8 would need to be dismissed at the time when A.Z. took the stand and testified in the manner that she did. It was only after A.Z.'s testimony was complete that the trial court was able to conclusively determine that those charges were, as a matter of law, not supported by sufficient evidence given the definition of "sexual conduct" applicable to those charges did not include digital penetration. Therefore, even when considering the entirety of the record from the trial court proceedings, in conjunction with the affidavits from Hall and his wife, B.H., Hall did not present any substantive grounds that would entitle him to relief.

{¶ 48} Regardless, even if we were to find Hall had presented an argument that could be considered a substantive ground for relief that would ordinarily necessitate the trial court holding a hearing on the matter, Hall has failed to establish that his trial counsel provided him with ineffective assistance based on the allegations set forth within his and his wife B.H.'s affidavits.

{¶ 49} "The standard by which we review claims of ineffective assistance of counsel is well established." *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). To establish ineffective assistance, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Id*. at 688. When making this determination, the

reasonableness of counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id*. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id*. "A defendant's failure to make a sufficient showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance." *State v. Lloyd*, 171 Ohio St.3d 353, 2022-Ohio-4259, ¶ 31, citing *id.* at 697.

{¶ 50} Here, although couched in slightly different terms, Hall is essentially arguing that his trial counsel's failure to discover before trial that the pre-September 3, 1996, definition of "sexual conduct" set forth in R.C. 2907.01(A) did not include digital penetration constituted deficient performance that fell below an objective standard of reasonableness. To support this claim, Hall argues the underlying reason the jury found him guilty of sexually abusing E.A. was due to the improper introduction of A.Z.'s testimony into evidence. This is because, according to Hall, the introduction of A.Z.'s testimony into evidence "changed the dynamic of the trial" and left the jury "under the impression" that her testimony also "went to the allegations of rape against Hall." But, even if we were to agree with Hall as it relates to his trial counsel's performance, deficient or not, Hall cannot demonstrate that he suffered any resulting prejudice by his trial counsel's failure to discover that it was the original 1974 definition of "sexual conduct" that applied to Hall's alleged sexual abuse of A.Z. rather than the revised September 3, 1996 definition set forth in R.C. 2907.01(A).

{¶ 51} In this case, and what Hall seems to be forgetting, is that this court has

already affirmed the trial court's decision to admit A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B) as part of his direct appeal. *Hall*, 2022-Ohio-1147 at ¶ 188-198. In so holding, this court initially rejected Hall's argument that it was error for the trial court to admit A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B) because the state did not offer A.Z.'s testimony to prove any one of the permitted purposes set forth within that rule, i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *Id.* at ¶ 194. In reaching this decision, this court stated:

> [A]lthough it is beyond dispute that the state was not offering A.Z.'s testimony as other-acts evidence when A.Z. initially took the stand, A.Z.'s trial testimony was undoubtably relevant and could have been introduced by the state at trial for at least two, if not more, of the permitted purposes set forth in Evid.R. 404(B) had the charges related to Hall's alleged sexual abuse of A.Z. never been brought. This includes, but is not necessarily limited to, [showing] Hall's intent and the absence of mistake or accident. "Other-acts evidence is admissible to negate a defendant's claim of mistake or accident with respect to the commission of the alleged crime; such evidence tends '[t]o show, by similar acts or incidents, that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge.'" [*State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 52], quoting McCormick, *Evidence*, Section 190, 804 (4th Ed. 1994).
>
> This is necessarily the case [here] given Hall's repeated denials to both A.Z. and E.A. that he had done anything more than what he admitted to within State's Exhibit 1, i.e., his "confession" and "love letter to his daughters" that he provided to police during the search of his home, wherein Hall acknowledged that he had touched both A.Z. and E.A. inappropriately when they were children. This is also the case given the statement Hall made during one of the telephone calls he had with A.Z. on April 18, 2019 claiming he did not remember doing any of the things that A.Z. and E.A. were alleging, but that if he "was ever wasted and accidentally did something that is one thing." This is in addition to Hall's statements during that same April 18, 2019 telephone call, as well as Hall's May 1, 2019 telephone call with E.A., wherein Hall claimed that maybe he did not remember anything that A.Z. and E.A. were alleging because he had been

- 29 -

sleepwalking or because he might be a paranoid schizophrenic with split personalities.

Hall, therefore, did not merely deny A.Z.'s and E.A.'s allegations ever occurred. Hall also defended against A.Z.'s and E.A.'s allegations by claiming if something had happened that it was accidental, inadvertent, or unintended because he was "wasted," sleepwalking, or possibly suffering from split personalities. Accordingly, because Hall placed his intent at issue by claiming his actions were accidental, innocent, or without his knowledge, A.Z.'s testimony was properly admissible as other-acts evidence under Evid.R. 404(B) to show, at the very least, intent and the absence of mistake or accident. *See, e.g.,* [*State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 4, 28-31] (finding "other-acts evidence related to [one child victim] was properly admissible to show intent and absence of mistake" at trial where appellant was being tried for raping another child victim and defending against the charge by claiming the rape never happened, but "if it was happening in the middle of the night, he was not aware of it"). Hall's claim otherwise lacks merit.

*Id.*, 2022-Ohio-1147 at ¶ 194-196.

{¶ 52} This court also rejected Hall's argument that it was error for the trial court to admit A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B) because, "without limiting the scope" of A.Z.'s testimony prior to her taking the stand, A.Z.'s testimony was highly prejudicial, thereby requiring its exclusion under Evid.R. 403(A). *Id.* at ¶ 197. In so holding, this court stated:

> Without question, A.Z.'s testimony was prejudicial. All evidence presented by the prosecutor is prejudicial. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. But not all evidence *unfairly* prejudices a defendant. *State v. White*, 12th Dist. Warren No. CA2018-09-107, 2019-Ohio-4312, ¶ 31. "Under Evid.R. 403(A), only evidence that is *unfairly* prejudicial is excludable." (Emphasis sic.) *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 60. "Unfairly prejudicial evidence is not merely unfavorable evidence; rather, it is evidence, which might result in an improper bias for a jury decision." *State v. Mills*, 12th Dist. Clermont No. CA2015-12-101, 2016-Ohio-6985, ¶ 18, citing *State v. Bowman*, 144 Ohio App.3d 179, 186 (12th Dist.2001).
>
> "Weighing the probative value of the evidence against its

- 30 -

prejudicial effect is a highly fact-specific and context-driven analysis." *Hartman*, 2020-Ohio-4440 at ¶ 30. Therefore, despite Hall's claims, when considering the trial court found it proper to admit A.Z.'s testimony as other-acts evidence, the trial court clearly determined that the probative value of A.Z.'s testimony did not substantially outweigh the danger of unfair prejudice to Hall, thereby requiring its exclusion under Evid.R. 403(A). *See* Evid.R. 403(A) ("[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury"). The trial court did not abuse its discretion in reaching this decision. That is to say, the trial court's decision finding the probative value of A.Z.'s testimony did not substantially outweigh the danger of unfair prejudice to Hall was not unreasonable, arbitrary, or unconscionable. Hall's claim otherwise again lacks merit. Accordingly, for the reasons outlined above, Hall's second assignment of error lacks merit and is overruled.

*Hall*, 2022-Ohio-1147 at ¶ 197-198.

{¶ 53} This court also affirmed the trial court's instructions it provided to the jury regarding the manner in which it could consider A.Z.'s testimony as "other-acts" evidence under Evid.R. 404(B) when determining whether Hall had sexually abused E.A. In so holding, this court initially rejected Hall's argument that the trial court erred by failing to give the jury a limiting instruction prior to A.Z. taking the stand and testifying to the "other-acts" evidence discussed more fully above. In reaching this decision, this court stated:

> [A]s the record indicates, the trial court was unaware that the charges related Hall's alleged sexual abuse to A.Z., Counts 1, 2, 3, 4, 5, 7, and 8, would need to be dismissed at the time when A.Z. took the stand and testified in the manner that she did. Nobody did. It was only after A.Z.'s testimony was complete that the trial court was able to conclusively determine that those charges were, as a matter of law, not supported by sufficient evidence given the definition of "sexual conduct" applicable to those charges did not include digital penetration. Therefore, because it was only after A.Z. testified that anybody — including Hall — knew the charges related to A.Z. would need to be dismissed, the trial court had no way of knowing it would need provide the jury with a limiting instruction regarding A.Z.'s testimony before A.Z. ever took the stand. Accordingly, Hall's claim alleging the trial court erred by failing to give the jury a limiting instruction regarding

- 31 -

other-acts evidence prior to A.Z. taking the stand lacks merit.

*Hall*, 2022-Ohio-1147 at ¶ 202.

{¶ 54} This court also rejected Hall's argument that the instructions the trial court provided to the jury regarding the A.Z.'s testimony was overbroad, confusing, and prejudicial. This included Hall's challenge to the trial court's instruction it provided to the jury after the state formally rested its case-in-chief, which provided:

> The Court has withdrawn from your consideration Counts 1, 2, 3, 4, 5, 7 and 8. You are not to speculate as to why the Court has withdrawn them. Evidence relating to those counts was received about the commission of other acts, other than the remaining offenses with which the Defendant is charged in this trial, specifically the allegations made by [A.Z.], that evidence was allowed for a limited purpose. It was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity with that character in this case with the remaining charges.
>
> If you find at the close of the case that the evidence of the other acts is true and that the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it tends to prove the Defendant's motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*Id.*, at ¶ 203.

{¶ 55} This court further rejected Hall's challenge to the instruction the trial court provided to the jury regarding A.Z.'s testimony as part of its final jury instructions, which, like the trial court's earlier instruction set forth above, provided:

> Evidence was received about the commission of other acts, other than the offense with which the Defendant is not charged in this trial. Specifically, I am referring to the allegations of [A.Z.]
>
> That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity with that character in this case regarding the remaining counts involving [E.A.]

> If you find that the evidence of other acts as alleged by [A.Z.] as true, and that the Defendant committed them, you may consider that evidence only for the purposes of deciding whether it proves the Defendant's motive, opportunity, intent or purpose, absence of mistake or accident, or preparation or plan to commit the offenses charged in this trial. That evidence cannot be considered for any other purpose.

*Hall*, 2022-Ohio-1147 at ¶ 204.

{¶ 56} Additionally, citing the Ohio Supreme Court's decision in *Hartman*, 2020-Ohio-4440, we rejected Hall's argument that the instructions the trial court provided to the jury regarding A.Z.'s testimony were clearly prejudicial to him. In rejecting Hall's argument, this court determined that, unfortunately, the trial court's instructions regarding A.Z.'s testimony were not tailored to the facts of the case as required by *Hartman* at ¶ 70 ("when a court issues a limiting instruction with respect to other-acts evidence, the instruction should be tailored to the facts of the case"). However, when taken in context, this court determined that portion of the Ohio Supreme Court's decision in *Hartman* was undoubtedly dicta and clearly intended to apply prospectively to jury trials coming after that case was released. In so holding, this court noted:

> The Ohio Supreme Court specifically states as much in the next sentence noting that, "[*g]oing forward*, courts should explain, in plain language, the purposes for which the other acts may and may not be considered." (Emphasis added.) *Id*. at ¶ 70. Therefore, because the Ohio Supreme Court's decision in Hartman was released on September 22, 2020, which was nearly a full month after Hall's jury trial concluded, the Ohio Supreme Court's commentary in Hartman that, going forward, trial courts should use plain language to explain the purpose(s) that other-acts evidence may and may not be considered, could not have been applied by the trial court to the case at bar. The trial court applied the law as it existed at the time, which is all that the trial court could be expected to do.

*Hall*, 2022-Ohio-1147 at ¶ 206

{¶ 57} In reaching this decision, this court further noted that, although Hall did

initially state that it was his belief that the trial court's final instruction to the jury "needs to be tailored to what the State intends to offer that for," Hall did not object to the trial court's instruction on that basis. Hall instead stated, "that works" regarding the instruction the trial court provided to the jury after the state formally rested its case-in-chief, and "[n]o objection, Your Honor," when asked if he had any objection to the trial court's instruction it provided to the jury as part of its final jury instructions. *Id.* at ¶ 207. Therefore, this court determined that, just like the appellant in *Hartman*, because Hall did not object to the trial court's challenged instructions, no plain error occurred in this case. *Id.,* citing *Hartman*, 2020-Ohio-4440 at ¶ 72.

{¶ 58} Based on the foregoing, even if this court were to find Hall's trial counsel's performance was deficient, because this court has already determined that the trial court did not err by admitting A.Z.'s testimony as "other-acts" evidence under Evid.R. 4040(B), Hall cannot establish that he was in any way prejudiced by his trial counsel's failure to discover before trial that digital penetration was not included in the pre-September 3, 1996 definition of "sexual conduct" set forth in R.C. 2907.01(A). This is because, even had Hall's trial counsel made that discovery, the jury would still have heard A.Z.'s testimony and been permitted to consider it for at least two, if not more, of the permitted purposes set forth in Evid.R. 404(B) when determining whether Hall had sexually abused E.A. had the charges related to Hall's alleged sexual abuse of A.Z. never been brought. As noted above, this includes, but is not necessarily limited to, showing Hall's intent and the absence of mistake or accident with respect to Hall's sexual abuse of E.A.

**Conclusion**

{¶ 59} Therefore, because Hall cannot demonstrate that he suffered any resulting prejudice, the record on its face demonstrates that Hall is not entitled to relief, thereby mandating the trial court to dismiss Hall's petition for postconviction relief without a

hearing. *See Bunch*, 2022-Ohio-4723 at ¶ 24, citing R.C. 2953.21(D) and (E). Accordingly, whether it be based upon the doctrine of res judicata, or on this alternative ground, because the trial court did not err by summarily dismissing Hall's petition for postconviction relief without a hearing, Hall's single assignment of error lacks merit and is overruled.

{¶ 60} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.