[Cite as *State v. Alexander*, 2025-Ohio-236.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No.  23CA1164 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Barry Alexander, | : | **RELEASED 1/23/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Barry Alexander, London, Ohio, pro se appellant.

Aaron E. Haslam, Adams County Prosecutor, West Union, Ohio, for appellee.
_____

Hess, J.

{¶1}   Barry Alexander appeals from a judgment of the Adams County Court of Common Pleas overruling his petition for postconviction relief without a hearing. Alexander presents five assignments of error asserting his constitutional rights were violated because: (1) the State failed to disclose impeachment evidence, (2) he received ineffective assistance of counsel, (3) law enforcement lied at trial to convict him, (4) law enforcement manufactured false narratives in police reports to mislead counsel, and (5) law enforcement deceived him into returning to the ambit of a search warrant.  For the reasons which follow, we overrule the second and fifth assignments of error.  We cannot reach the merits of the first, third, and fourth assignments of error because the trial court

did not issue findings of fact and conclusions of law sufficient to allow us to conduct a meaningful review of them. Accordingly, we reverse the trial court's judgment with respect to Alexander's claims that the State failed to disclose impeachment evidence, that law enforcement lied at trial to convict him, and that law enforcement manufactured false narratives in police reports to mislead counsel. We remand for further proceedings with respect to those claims consistent with the law and this decision. We affirm the trial court's judgment in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} The Adams County grand jury indicted Alexander on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a first-degree felony. The grand jury later issued a supplemental indictment additionally charging him with trafficking in drugs in violation of R.C. 2925.03(A)(2), a first-degree felony. Alexander filed a motion to suppress evidence which the trial court denied after a hearing, and the matter proceeded to a jury trial.

{¶3} We previously summarized the evidence at trial as follows:

> Detective Sam Purdin of the Adams County Sheriff's Office testified that on March 2, 2021, he and Sergeant Brian Newland went to Alexander's residence on Elm Street in Peebles, Ohio, to execute a search warrant. No one appeared to be there, so they went to Fifth Avenue to serve arrest warrants while they waited for Alexander to come home. First, they tried to serve Elizabeth Michaels. As they pulled into her driveway, Detective Purdin saw Alexander, Josh Renschen, and Samantha Arey walking away from Michaels's trailer toward a maroon Toyota Camry. Alexander got in the front passenger seat, Arey got in the back seat, and Renschen started to get into the driver's seat but stopped when he saw law enforcement. Detective Purdin did not think any of them had a valid driver's license and spoke to Renschen about him not having a license. Renschen said he was not driving. Sergeant Newland knocked on Michaels's door, but she did not answer. Detective Purdin and Sergeant Newland left and went a couple of houses down where they unsuccessfully tried to serve a warrant on Roger Gilpin, Jr. Afterwards, Detective Purdin saw the Camry speeding down Fifth

Avenue and pursued it with Sergeant Newland with the intent to conduct a traffic stop. However, the Camry pulled into Alexander's driveway before they could catch up to it.

Renschen and Arey exited the vehicle, and Alexander was sitting in the front passenger seat with the door open and one foot out of the vehicle. Alexander had a cooler in his hands and "seemed to be concerned" about it. He "appeared to just kind of be looking around" and "fidgeting with this cooler." "He had sat it down a couple of times and picked it up. And he started to get out of the car and then sat back down." While Detective Purdin spoke to Renschen and Arey, Alexander exited the vehicle without the cooler. Sergeant Newland read the search warrant to Alexander, and Detective Purdin retrieved the cooler from the Camry's front passenger floorboard, opened it, and saw "BA" written on the lid. Inside the cooler, he found hypodermic needles, a black zippered bag containing cash, and another zippered bag containing ten clear plastic baggies of what appeared to be methamphetamine. Detective Purdin told Sergeant Newland about the suspected methamphetamine, and he advised Alexander of his *Miranda* rights. Alexander acknowledged his rights and "just started inquiring about how many years he thought he would get and about a bill of particulars. He wanted to know what he could to just kind of get it over with." Subsequently, Alexander led Detective Purdin into his bedroom and pointed out a glass pipe and set of digital scales. Detective Purdin testified that people who buy and sell methamphetamine use digital scales to weigh the drug.

Detective Purdin thought Alexander, who only has one eye, has difficulty seeing but did not know the extent of the problem. Detective Purdin assumed that Alexander could see some. Alexander did not need assistance to walk from Michaels's trailer to the Camry or from the Camry to his residence, led Detective Purdin into the residence, and told Detective Purdin that he "could see shadows and make out figures and so forth."

Sergeant Newland of the Adams County Sheriff's Office gave a similar account of the events of March 2, 2021, leading up to the execution of the search warrant. However, Sergeant Newland testified that he saw the cooler for the first time after Detective Purdin removed it from the Camry, searched it, and notified him about the suspected methamphetamine inside. Sergeant Newland advised Alexander of his *Miranda* rights and asked him how much methamphetamine was inside the cooler. Alexander said he did not know and asked Detective Purdin "how much time he would get." Renschen and Arey denied having any knowledge of the methamphetamine. Sergeant Newland had Detective Purdin put the cooler back in the Camry so he could photograph it. Sergeant Newland weighed the ten baggies in the cooler and performed a field test on the contents. The baggies weighed 287 grams and tested positive for the presence of methamphetamine. Sergeant Newland testified that a typical dose of

methamphetamine is a tenth of [a] gram, and 287 grams would be . . . 2,870 doses, which is more than a "personal use" amount.

Pamela Farley, a forensic scientist at the Ohio Bureau of Criminal Investigation testified that she analyzed six of the ten baggies law enforcement found. The six baggies weighed 166.46 grams, plus or minus .08 grams, and contained methamphetamine. Farley did not analyze the other four baggies because even if they contained methamphetamine, the additional weight of the material in those baggies would not increase the penalty level in this case. Farley testified that methamphetamine is a schedule II controlled substance, and the bulk amount of it is three grams.

*State v. Alexander*, 2022-Ohio-1812, ¶ 6-10 (4th Dist.).

{¶4} "The jury found Alexander guilty on both counts. The parties stipulated the offenses should merge for sentencing purposes, so the court merged them, and the state elected to proceed to sentencing on the aggravated possession of drugs count. The court imposed an indefinite prison term of 11 to 16.5 years." *Id.* at ¶ 11.

{¶5} Alexander appealed and presented four assignments of error: (1) "The trial court erred to the prejudice of Mr. Alexander by refusing to grant a mistrial after prejudicial statements allegedly made by Mr. Alexander were elicited at trial that had not been provided to defense counsel," (2) "The trial court erred to the prejudice of Mr. Alexander by improperly denying his motion to suppress," (3) "The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Mr. Alexander's conviction," and (4) "The Reagan Tokes Act, as enacted by the Ohio legislator [sic] is unconstitutional, and the trial court erred by sentencing Mr. Alexander under that act." *Id.* at ¶ 12. We overruled the assignments of error and affirmed the trial court's judgment. *Id.* at ¶ 62. The Supreme Court of Ohio accepted Alexander's discretionary appeal on his fifth proposition of law, which challenged the constitutionality of the Reagan Tokes Act. *State v. Alexander*, 2022-Ohio-3322; *State v. Alexander*,

Supreme Court Case No. 2022-0820, Memorandum in Support of Jurisdiction. The Supreme Court affirmed our judgment on the authority of *State v. Hacker*, 2023-Ohio-2535. *In re Cases Held for State v. Hacker and State v. Simmons*, 2023-Ohio-3863, ¶ 1.

{¶6} During the pendency of his appeal in the Supreme Court of Ohio, Alexander filed a petition for postconviction relief in the trial court raising five claims: (1) the State failed to disclose impeachment evidence violating his rights to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution, (2) ineffective assistance of counsel deprived him of the effective assistance of counsel found in the Sixth and Fourteenth Amendments; (3) law enforcement lied at trial to convict him in violation of his rights to due process and a fair trial found in the Sixth and Fourteenth Amendments, (4) law enforcement manufactured false narratives in police reports that were filed which was fabricating evidence to mislead defense counsel in violation of Alexander's rights to due process and a fair trial found in the Sixth and Fourteenth Amendments, and (5) law enforcement deceived him to return to the ambit of the search warrant in violation of his Fourth Amendment rights.

{¶7} Alexander maintained that the detectives lied in police reports and at trial about encountering him while trying to serve warrants on Michael and Gilpin. Alexander asserted that the State failed to disclose the fact that Michael and Gilpin did not have arrest warrants at that time. Alexander claimed the real reason the detectives encountered him was to get Renschen, who they knew did not have a license, to drive him and the vehicle within the ambit of the search warrant. Alexander asserted defense counsel should have investigated and discovered that the detectives lied about the arrest warrants and allowed Renschen to drive Alexander home without a license. Alexander

claimed that if his constitutional rights had not been violated, the evidence against him would have been suppressed, and the case would have been dismissed, or there was a reasonable probability of a different result at trial.

{¶8}   Alexander supported his petition with the affidavits of Michael and Gilpin, who averred that on March 2, 2021, they did not have arrest warrants.  Alexander also supported the petition with the affidavit of Renchen, who averred, among other things, that on March 2, 2021, Detective Purdin had knowledge that Renschen did not have a valid driver's license, "directed" him to drive Alexander home and park at Alexander's residence, and gave Renschen his word that Renschen would not get in trouble for doing so.  Alexander also supported his petition with the affidavit of Arey, who averred, among other things, that on March 2, 2021, she witnessed Detective Purdin direct Renschen to get Alexander home.

{¶9}   The State filed a memorandum in response asserting that the detectives did not commit perjury. The State asserted that Michael did have an arrest warrant as evidenced by a printout from the online docket of the Adams County Court, which the State attached to its response. The State acknowledged that "it may appear that" Gilpin did not have an arrest warrant.  However, the State claimed that at the time in question, Gilpin "had an active case through Adams County Common Pleas Court" in which he "was subject to bond conditions." The State claimed that "beginning on or about December 26, 2020," Gilpin's bond officer "issued several reports indicating that [he] was looking for Mr. Gilpin who was in violation of these bond conditions."  The State asserted that the detectives "were aware" that the bond officer "was looking for Mr. Gilpin."  Thus, the detectives "had a reasonable belief that Mr. Gilpin was subject to investigation, even

if not under an actual warrant, and therefore, the detectives could not have committed perjury as they did not knowingly make a false statement under oath." The State attached to its response four reports from the bond officer spanning from December 26, 2020 to March 16, 2021, detailing his efforts to find Gilpin.

{¶10} The State also maintained that the arrest warrants "or lack thereof" were "irrelevant to the search." In addition, the State claimed that prior to the suppression hearing, it gave the defense a video in which Renschen alleged the detectives instructed him to drive Alexander home knowing he could not legally do so, and the detectives denied the allegation. The State asserted that because Alexander knew about Renchen's claims "prior to any hearings in this matter, the claims now and the affidavits supporting them should be disregarded . . . as stale information." The State also asserted that the ineffective assistance claim was meritless. Finally, the State asserted that "Claim Five . . . alleges violations in the search warrant that were previously addressed by the Defendant in his Motion to Suppress and subsequent hearing on that motion. In addition, the Fourth District Court of Appeals has issued an opinion upholding the search and the search warrant. . . . As such, this claim should be overruled and dismissed under *res judicata*."

{¶11} The trial court issued a judgment entry overruling the petition. The trial court set forth Alexander's five claims and stated:

> Defendant presented argument and affidavits asserting that the State failed to disclose impeachment evidence related to outstanding warrants of two individuals, that counsel failed to investigate the existence of these warrants and other evidence, that law enforcement officers committed perjury, manufactured false evidence, and deceived the Defendant to return to the ambit of the search warrant when they were not within the warrant's ambit. The State presented argument and evidence asserting that one of the individuals had an outstanding warrant and the

other was "wanted" by a bond officer for violation of bond conditions. Further, the State detailed the evidence in the record that was known to Defendant prior to the trial and suppression hearing in this case. Lastly, Defendant provides no evidence that he requested his counsel to conduct any specific investigation and that counsel failed to do so or failed to conduct any other reasonable investigation.

Furthermore, assuming arguendo that the Court could entertain Defendant's Petition, the doctrine of res judicata bars the reconsideration of the issues relating to the search warrant raised in Defendant's Petition. E.g., *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.3d 233 (1996). Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal.[ ] *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76. Defendant filed a direct appeal in the Fourth District Court of Appeals. Defendant raised the same or similar arguments that he brings before this Court in his Petition relating to the search warrant. Further, Defendant presents grounds for relief in his Petition that are based on facts present in the record and could have been raised in the direct appeal. Res judicata thus patently bars further litigation of the issues raised in his Petition. *State v. Keeley,* 4th Dist. Washington No. 13CA34, 2014-Ohio-693, 2014 WL 800488, ¶ 6 (pointing out that res judicata prevents defendant from re-litigating same issue over and over again).

Defendant bears the burden of demonstrating a constitutional violation. The Court finds that Defendant has failed to establish substantive grounds for relief. The Court further finds that Defendant has not demonstrated that counsel's performance fell below an objective standard or [sic] reasonableness nor has he demonstrated that the result of the proceedings would have been different.

Therefore, based upon the foregoing reasoning, this Court hereby overrules Defendant's Petition for Postconviction relief because there are no substantive grounds entitling for relief [sic] as shown by the Petition, files and records. Pursuant to Ohio Revised Code §2953.21(F), the Court is not required to hold an evidentiary hearing or issue findings of fact and conclusions of law.

## II. ASSIGNMENTS OF ERROR

{¶12} Alexander presents five assignments of error:

Assignment of Error One: The State failed to disclose impeachment evidence in violation of Appellant[']s right to due process and a fair trial found in the Fourteenth and Sixth Amendments to the United States Constitution.

Assignment of Error Two:  The Appellant received ineffective assistance of counsel violating his right to the effective assistance of counsel found in the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error Three:  Law enforcement officers lied at trial to convict the Appellant.  This violated his right to due process and a fair trial found in the Fourteenth and Sixth Amendments to the United States Constitution.

Assignment of Error Four:    Law enforcement manufactured false narrative[s] that were in police reports that were filed.  That is fabricated evidence to mislead counsel.  This violates the Appellant[']s right to due process and a fair trial found in the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error Five:  Law enforcement agents deceived the Appellant to return to the ambit of the search warrant when they were not within the warrant[']s ambit.  This violated the Appellant[']s right to Fourth Amendment protections.

For ease of discussion, we will address the assignments of error out of order.

### III.  STANDARD OF REVIEW AND GENERAL PRINCIPLES

**{¶13}**  "[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence."  *State v. Gondor*, 2006-Ohio-6679, ¶ 58.  "This standard applies to both a merit review and a dismissal occurring without a hearing."  *State v. Ross*, 2018-Ohio-4105, ¶ 11 (4th Dist.).  "A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable."  *State v. Knauff*, 2014-Ohio-308, ¶ 19 (4th Dist.), citing *Cullen v. State Farm Mut. Auto Ins. Co.*, 2013-Ohio-4733, ¶ 19.

**{¶14}**  "In Ohio, persons convicted of criminal offenses may petition a trial court for postconviction relief if they fit into one of four categories," *State v. Miller*, 2023-Ohio-3448,

¶ 19 (Kennedy, C.J., concurring in judgment), which are set forth in R.C. 2953.21(A)(1)(a)(i) through (iv).  Relevant here is R.C. 2953.21(A)(1)(a)(i), which states that "[a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" "may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief[.]"

{¶15}  "A criminal defendant seeking to challenge a conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing."  *State v. Ludwick*, 2023-Ohio-1113, ¶ 15 (4th Dist.), citing *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999).  R.C. 2953.21 "provides three methods for adjudicating the petition."  *State v. Barron*, 2023-Ohio-1249, ¶ 9 (12th Dist.).  "[T]he trial court may (1) summarily dismiss the petition without holding an evidentiary hearing, (2) grant summary judgment on the petition to either party who moved for summary judgment, or (3) hold an evidentiary hearing on the issues raised by the petition."  *Id.,* citing R.C. 2953.21(D)-(F).

{¶16}  Before granting a hearing, the court "shall determine whether there are substantive grounds for relief."  R.C. 2953.21(D).  "In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."  *Id.* " 'Substantive grounds for relief exist and a hearing is warranted if the petitioner produces

sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights.' " *Ludwick* at ¶ 16, quoting *In re B.C.S.*, 2008-Ohio-5771, ¶ 11 (4th Dist.). "Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed 'errors resulted in prejudice.' " *Id.*, quoting *Calhoun* at 283. "[A] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun* at paragraph two of the syllabus (discussing former R.C. 2953.21(C), which is similar to the current version of R.C. 2953.21(D)). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F).

**{¶17}** "In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun* at paragraph one of the syllabus. "An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false." *Id.* at 284. In assessing an affidavit's credibility, the court "should consider all relevant factors," including

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the

petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Id.* at 285.

## IV.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

**{¶18}** R.C. 2953.21(D) states:  "If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."  R.C. 2953.21(H) states: "If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition." " ' "The obvious reasons for requiring findings are '* * * to apprise [the] petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly determine appeals in such a cause.' " ' " (Ellipsis sic.  Alteration added.)  *Calhoun*, 86 Ohio St.3d at 291, quoting *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19, 19 (1988) ("*Harris*"), quoting *State v. Mapson*, 1 Ohio St.3d 217, 219 (1982), *overruled on other grounds by State ex rel. Penland v. Dinkelacker*, 2020-Ohio-3774, quoting *Jones v. State*, 8 Ohio St.2d 21, 22 (1966).  " ' "[F]indings and conclusions are essential in order to prosecute an appeal." ' "  *Id.*, quoting *Harris* at 19, quoting *Mapson* at 219.  " ' "Without them, a petitioner knows no more than [that] he lost and hence is effectively precluded from making a reasoned appeal.  In addition, the failure of a trial judge to make the requisite findings prevents any meaningful judicial review, for it is the findings and the conclusions which an appellate court reviews for error." ' "  (Alteration sic.)  *Id.*, quoting *Harris* at 19, quoting *Mapson* at 219.

**{¶19}** "A trial court need not discuss every issue raised by [the petitioner] or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law."  *Id.*  "The findings need only be sufficiently comprehensive and pertinent to the issue

to form a basis upon which the evidence supports the conclusion." *Id.* at 291-292, citing *State v. Clemmons*, 58 Ohio App.3d 45, 46 (2d Dist.1989), citing 5A Moore, *Federal Practice*, Section 52.06[1], at 52-142 (2d Ed.1990). "A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." *Id.* at 285. "A trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." *Id.* at paragraph three of the syllabus. "[A] trial court's failure to issue findings of fact and conclusions of law with respect to a judgment denying postconviction relief is an error that may be corrected through an appeal, not a defect depriving the appellate court of jurisdiction over the appeal." *Dinkelacker* at ¶ 3.

**{¶20}** In this case, the trial court effectively dismissed Alexander's petition without a hearing. The court stated that pursuant to R.C. 2953.21(F), it was not required to issue findings of fact and conclusions of law, but R.C. 2953.21(F) contains no such statement. R.C. 2953.21(D) mandates that if the court dismisses a petition, it "make and file findings of fact and conclusions of law with respect to such dismissal." Despite the trial court's statement, as we explain below, the trial court's judgment is sufficient for us to conduct a meaningful review of some, but not all, of Alexander's assignments of error.

## V. FOURTH AMENDMENT CLAIM

**{¶21}** In the fifth assignment of error, Alexander contends that his Fourth Amendment rights were violated when law enforcement agents "deceived [him] to return

to the ambit of the search warrant when they were not within the warrant[']s ambit." Alexander asserts that a seizure violates the Fourth Amendment if it is executed through "an unreasonable ruse." He asserts that the detectives "said they were where the Appellant was to serve warrants on Michael and Gilpin when they were there to do what they did. That was to allow a non-licensed driver, who they knew was not licensed, to bring Appellant and the vehicle he was in within the ambit of the search warrant[.]" He asserts that "Renschen[']s affidavit is clear that he was directed by [D]etective Purdin to drive the Appellant to his residence," and "[t]his was witnessed by Samantha Arey." Alexander claims this "is by all accounts a violation of [his] Fourth Amendment rights."

{¶22} Alexander's fifth assignment of error corresponds to the fifth claim in his petition for postconviction relief. At the trial level, the State argued this claim "should be overruled and dismissed under *res judicata*" because it "allege[d] violations in the search warrant" which were addressed in Alexander's motion to suppress and at the suppression hearing, and this court "issued an opinion upholding the search and the search warrant." The trial court found that "the doctrine of res judicata bars the reconsideration of the issues relating to the search warrant raised in Defendant's Petition." The court also generally found that Alexander "failed to establish substantive grounds for relief" and that there were "no substantive grounds entitling for relief [sic] as shown by the Petition, files and records." Thus, we interpret the trial court's decision as giving two alternative bases for dismissing Alexander's fifth claim: (1) it was barred by res judicata, and (2) Alexander did not establish substantive grounds for relief.

{¶23} "When a trial court grants judgment on multiple, alternative bases and an appellant does not challenge one of those bases on appeal, this Court will uphold the

judgment on the unchallenged basis." *Schutte v. Summit Cty. Sheriff's Office*, 2018-Ohio-2565, ¶ 21 (9th Dist.). Alexander's fifth assignment of error essentially challenges the determination that he did not establish substantive grounds for relief as to his fifth claim. He does not challenge the trial court's alternative determination that res judicata barred his fifth claim. Thus, we uphold the dismissal of that claim on the unchallenged basis of res judicata and overrule the fifth assignment of error.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

**{¶24}** In the second assignment of error, Alexander contends he received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. Alexander maintains defense counsel had a duty to investigate the charges against him. He asserts that "[h]ad counsel done a thorough investigation he would have found that both detectives were being dishonest and moved to impeach them" concerning the lack of warrants for Michael and Gilpin. Alexander claims further investigation would have revealed that the detectives allowed Renschen to drive him home without a license to "trap" him and "effectuate the search warrant," and "[t]he charges could have been dismissed." He claims "the behavior of law enforcement would have left the jury with a question concerning the real reason they were acting contrary to their own standards." He asserts "[i]t would seem that the jury would have found that to be very deceptive, allowing the jury to believe the car the drugs were found in was not the Appellant[']s therefor the drugs were not his."

**{¶25}** "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶

10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *Gondor*, 2006-Ohio-6679, at ¶ 62. "[T]o show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 2006-Ohio-2815, ¶ 95, citing *Strickland* at 687, and *Bradley* at 143. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. Failure to satisfy either part of the ineffective-assistance-of-counsel test is fatal to the claim. *See id.* at 697. " 'In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *State v. Queen*, 2022-Ohio-4735, ¶ 16 (4th Dist.), quoting *State v. Jackson*, 64 Ohio St. 2d 107 (1980), syllabus.

**{¶26}** Alexander's second assignment of error corresponds to the second claim in his petition. As we will discuss in more detail in the next section, it is unclear whether the trial court relied on res judicata as a ground for dismissing Alexander's petition with respect to any of his claims aside from his fifth claim. However, this lack of clarity is immaterial for purposes of our ability to review the second assignment of error. The court found that Alexander failed to establish substantive grounds for relief with respect to any of his claims, and the court explained the rationale for this finding as to the ineffective assistance of counsel claim. The court found that Alexander provided "no evidence that

he requested his counsel to conduct any specific investigation and that counsel failed to do so or failed to conduct any other reasonable investigation." And the court concluded that he did not demonstrate "that counsel's performance fell below an objective standard or [sic] reasonableness" or "that the result of the proceedings would have been different."

**{¶27}** Alexander has not demonstrated that the trial court abused its discretion when it dismissed his petition with respect to his ineffective assistance claim. The trial court is correct that Alexander provided no evidence that he asked his counsel to conduct any specific investigation, and that counsel failed to do so or failed to conduct any other reasonable investigation. Alexander does not direct our attention to anything in the record indicating the extent of defense counsel's pretrial investigation, and "we cannot infer a defense failure to investigate from a silent record." *State v. Were*, 2008-Ohio-2762, ¶ 244. Accordingly, we overrule the second assignment of error.

## VII. REMAINING CLAIMS

**{¶28}** We will address the remaining assignments of error together. In the first assignment of error, Alexander contends that the State failed to disclose impeachment evidence in violation of his rights to due process and a fair trial under the Sixth and Fourteenth Amendments. He asserts the detectives lied about serving arrest warrants on Michael and Gilpin. He also asserts the trial court erred when it found the State presented evidence that one of them had an outstanding warrant and the other was wanted by a bond officer. Alexander maintains that the State's evidence that Michael had an outstanding warrant "was not accurate" because "[i]t was an uncertified unreliable document that carried no explanation of how this document was a warrant." He also asserts that "being wanted by a bond officer for violating bond conditions is not by any

means a warrant" and that the trial court had to know it was not the job of the detectives to seek out individuals who violate bond conditions.

{¶29} Alexander claims that if defense counsel had known "that warrants did not exist for at least one of the people [the detectives] said did have a warrant he could have had the case dismissed." He also claims that if the jury had known the detectives were being dishonest, "there is little doubt the result of the proceeding would have been different." Alexander asserts that "[a]nytime a law enforcement officer who is the main state[']s witness is not truthful under oath it is material" and that "it is quite possible a law enforcement officer that lies under oath would also fabricate drug charges." He maintains that "dishonesty from the State['s] star witnesses who are sworn to uphold the law could have easily shown the jury that [he] did not possess the drugs that were found in a vehicle that was not his vehicle." Alexander also asserts that "a trial where law enforcement is not honest cannot be fair, especially when law enforcement is the state's main and star witness." He claims "[t]here is not a scintilla of reliable evidence when law enforcement that found the drugs in a car with several other people lies under oath." In addition, he asserts that "the police allowed an unlicensed driver to drive [him] to his residence so a search could be conducted" and "had the jury been apprised of that, a defense concerning [him] not possessing the drugs could have been put forth as opposed to defense attacking everything but that [sic]."

{¶30} In the third assignment of error, Alexander contends law enforcement officers lied at trial to convict him in violation of his rights to due process and a fair trial under the Sixth and Fourteenth Amendments. Alexander claims the detectives "knowingly committed perjury by explicitly stating that they were serving warrants" on

Michael and Gilpin. He asserts that "there has been nothing put forth that convincingly reveals that there were warrants" because the State did not present "any reliable certified evidence, which is the same evidence expected from pro se litigants." He also asserts "[i]t is well established that [l]aw enforcement cannot break the law to enforce it," and "[m]inus that perjury the vehicle would never have been searched in accordance with the warrant," and "the drugs would never have been located."

{¶31} In the fourth assignment of error, Alexander contends that his rights to due process and a fair trial under the Sixth and Fourteenth Amendments were violated because "[l]aw enforcement manufactured false narrative[s] that were in police reports that were filed" which "is fabricated evidence to mislead counsel." Alexander cites caselaw for the position that when an officer fabricates and forwards known false evidence to prosecutors, the truth-seeking function of the trial process is corrupted. He asserts that "[t]he trial process includes gathering evidence to convict" and that "[e]vidence from an illegal search is tainted." Alexander claims the detectives lied about encountering him while serving arrest warrants on Michael and Gilpin, and this allowed the detectives to "lure the Appellant to the house that was the subject of the warrant." He claims this was illegal, and "[w]ithout luring the Appellant to the place where the warrant specified the drugs could not have been located."

{¶32} We cannot reach the merits of the first, third, and fourth assignments of error because the trial court did not issue findings of fact and conclusions of law sufficient to allow us to conduct a meaningful review of them. Alexander's first, third, and fourth assignments of error correspond to the first, third, and fourth claims in his petition. As discussed above, the court found Alexander failed to establish substantive grounds for

relief with respect to any of his claims. However, we cannot discern from the trial court's judgment entry the basis for that finding as to Alexander's first, third, and fourth claims. The State suggests these claims are meritless because it provided exhibits which showed that Michael had a warrant and that Gilpin was actively being sought for a bond violation. However, the trial court did not state that it was crediting the exhibits the State submitted, which were not incorporated into an affidavit, or indicate whether it was discounting Michael or Gilpin's affidavits, and if so, why.

**{¶33}** We also cannot conclude that res judicata is an alternative, unchallenged basis for the dismissal of Alexander's first, third, or fourth claims. On appeal, the State asserts that all Alexander's claims "can be conclusively resolved under the doctrine of res judicata," but it is not clear that the trial court dismissed the first, third, and fourth claims based on res judicata. The trial court stated that

> the doctrine of res judicata bars the reconsideration of the issues relating to the search warrant raised in Defendant's Petition. E.g., *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.3d 233 (1996). Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal.[ ] *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76. Defendant filed a direct appeal in the Fourth District Court of Appeals. Defendant raised the same or similar arguments that he brings before this Court in his Petition relating to the search warrant. Further, Defendant presents grounds for relief in his Petition that are based on facts present in the record and could have been raised in the direct appeal. Res judicata thus patently bars further litigation of the issues raised in his Petition. *State v. Keeley*, 4th Dist. Washington No. 13CA34, 2014-Ohio-693, 2014 WL 800488, ¶ 6 (pointing out that res judicata prevents defendant from re-litigating same issue over and over again).

Although the last sentence of the above quote is broadly worded, the trial court's earlier statements suggests its finding of res judicata applies only to issues relating to the search warrant. Alexander's fifth claim is the only one which explicitly mentions the search

warrant. And at the trial level, although the State asserted that Alexander's "claims and the arguments for them are all similar in substance," the State argued only that the fifth claim "should be overruled and dismissed under *res judicata*." Alexander did discuss the search warrant in his arguments in support of his other claims, but the trial court did not mention that fact or provide sufficient details about its res judicata finding for us to discern that the court sua sponte determined the doctrine barred Alexander's other claims.

## VIII. CONCLUSION

**{¶34}** For the foregoing reasons, we overrule the second and fifth assignments of error. We cannot reach the merits of the first, third, and fourth assignments of error because the trial court did not issue findings of fact and conclusions of law sufficient to allow us to conduct a meaningful review of them. Accordingly, we reverse the trial court's judgment with to respect Alexander's claims that the State failed to disclose impeachment evidence, that law enforcement lied at trial to convict him, and that law enforcement manufactured false narratives in police reports to mislead counsel. We remand for further proceedings with respect to those claims consistent with the law and this decision. On remand, if the trial court again summarily dismisses Alexander's petition as to those claims, the court should make and file findings of fact and conclusions of law in accordance with R.C. 2953.21(D) which apprise Alexander of the grounds for the decision and enable this court to conduct a meaningful review if Alexander appeals. We affirm the trial court's judgment in all other respects.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**